DECISION
{¶ 1} Relator, Kelly Services, Inc. ("relator") commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order allocating to relator 50 percent of the permanent total disability ("PTD") compensation award of respondent William E. Ziegler ("the claimant"), and ordering the commission to allocate 100 percent of the claimant's PTD award to respondent, United States Gypsum Company ("USG").
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in allocating the claimant's PTD award as it did, and recommended that this court deny the requested writ of mandamus. Both relator and USG filed objections to the magistrate's decision, and the commission filed a memorandum opposing both objections. In addition, relator filed a memorandum in opposition to USG's objections. This cause is now before the court for a full evaluation of the merits.
 {¶ 3} In its objections, relator argues that the magistrate erred in refusing to conclude that the case of State ex rel. TheDanis Companies v. Indus. Comm., 10th Dist. No. 03AP-1022,2004-Ohio-5252, mandates that the commission extrapolate from an expert's allocation of whole person impairment in order to determine the appropriate percentage of a PTD award to allocate to each employer. We overrule this objection because the magistrate correctly concluded that the Danis case contains no such mandate, and furthermore because the commission is the exclusive evaluator of disability. State ex rel. Kirkendall v.Indus. Comm. (1999), 87 Ohio St.3d 182, 183, 718 N.E.2d 906.
 {¶ 4} Relator also objects to the magistrate's finding that Dr. Uberti's report constituted some evidence supporting the commission's decision, arguing that because the SHO mischaracterized Dr. Uberti's opinion, the SHO's order fails to comply with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, 567 N.E.2d 245, and therefore the Uberti report is not "some evidence." Noll requires that the commission specifically state what evidence it has relied upon and briefly explain the reasoning for its decision. Id. at syllabus. The commission did so, and its mischaracterization of whether Dr. Uberti actually allocated impairment does not render the commission's order noncompliant with Noll. Moreover, no matter how the commission characterized Dr. Uberti's report, this does not change the substance of that report and the fact that the commission relied on it. In any case, the Uberti report deals with impairment, which is the province of medical experts, while disability, as we stated earlier, is the exclusive province of the commission.Kirkendall, supra.
 {¶ 5} Finally, relator argues that allocating the claimant's PTD award equally between relator and USG is unfair, inappropriate and against public policy. Relator never identifies which public policy is being violated, and we are aware of none. But relator does argue that the commission's decision is unfair because it results in penalizing an employer for hiring a worker that had a preexisting, obvious disability, when that worker's injury in the course and scope of the new job merely "br[oke] the camel's back." (Relator's Objections, at 6.)
 {¶ 6} As the magistrate explained, however, the claimant's loss of use of his left arm, occasioned by his second industrial injury, did not merely "break the camel's back." The fallacy of this argument consists in the fact that but for the claimant having lost the use of his left arm while employed by relator, he would not be permanently and totally disabled. After the claimant lost the use of his right arm while employed by USG, he was able to secure full-time employment and fully perform his work duties with his left hand; but after he lost the use of his left arm while employed by relator, he was no longer capable of sustained remunerative employment because his second industrial injury removed the only means he had of performing any job duties. Clearly, the claimant was able to work using either arm, but he must have use of one or the other, and relator and USG are each responsible for the claimant's loss of use of one arm; thus, it was not an abuse of discretion for the commission to allocate claimant's disability award equally between the two employers.
 {¶ 7} For all of the foregoing reasons, relator's objections are overruled.
 {¶ 8} In its objection, USG argues that the magistrate erred in concluding that the corrected tentative order subject of relator's mandamus action is effective against both relator and USG. USG contends that because the commission issued a separate corrected tentative order in the older claim (that is, the claim involving the claimant's industrial injury sustained while employed by USG), which allocated 100 percent of the PTD award to relator, and that order was never challenged, it became final and, therefore, the corrected tentative order allocating the PTD award equally, which was issued in the second claim, is ineffective as against USG.
 {¶ 9} We agree with the magistrate that USG has not properly challenged the commission's order because it has filed no complaint or cross-claim in mandamus. Having sought no relief in this court until this point in the proceedings, USG cannot now, in its objections to the magistrate's decision, seek relief from what it feels was an erroneous application to it of the commission's order in the second claim. Accordingly, USG's objections are overruled.
 {¶ 10} Having undertaken a review of relator's and USG's objections, considered the arguments of the parties, and independently appraised the record, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Brown and French, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Kelly Services, Inc., :
Relator, :
v. : No. 05AP-1192
Industrial Commission of Ohio, : (REGULAR CALENDAR) William E. Ziegler and United States Gypsum Company, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on June 23, 2006 Scheuer, Mackin Breslin, J. Kent Breslin and Eric A.Rich, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Donald R. Ford, for respondent William E. Ziegler.
Michael Goldstein Co., L.P.A., and Michael S. Goldstein,
for respondent United State Gypsum Company.
 IN MANDAMUS {¶ 11} Relator, Kelly Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which allocated 50 percent of the permanent total disability ("PTD") award to respondent William E. Ziegler ("claimant") and ordering the commission to redetermine the allocation of claimant's PTD award between relator and respondent United States Gypsum Company ("US Gypsum") consistent with the percentage of impairment opinions of Drs. Dunne and Sterle.
Findings of Fact:
 {¶ 12} 1. Claimant has sustained two work-related injuries for two different employers. On November 7, 1977, while employed with US Gypsum, claimant's right hand was pulled into a machine and his claim was ultimately allowed as follows: "total loss of right hand; skin graft areas at right side of abdomen" and is assigned claim No. 631616-22. Claimant became employed again and sustained a second work-related injury during the course of his employment with relator herein on November 17, 1993. That claim has been allowed as follows: "epicondylitis left elbow; left tardy ulnar nerve palsy; olecranon bursitis; post-surgical staph infection left elbow" and is assigned claim No. L254897-22.
 {¶ 13} 2. On December 13, 2004, claimant filed an application for PTD compensation. Claimant's application was supported by the March 18, 2004 report of his treating physician, Dr. John F. Steele, who stated as follows in that report:
It is in my professional medical opinion that based on these conditions, the decreased strength in the left arm due to these conditions and the loss of the right lower arm the patient is permanently and totally disable from all gainful employment.
 {¶ 14} 3. The record also contains the June 16, 2004 report of Dr. Edward J. Uberti who examined claimant relative to his 1993 injury to the left arm. Regarding the issue of whether he believed claimant was permanently and totally disabled, Dr. Uberti specifically stated as follows:
The question at the present time is whether or not Mr. Zeigler is permanently and totally disabled based on his workman's compensation claim. Obviously, if we take into account that this gentleman does not have a right hand, I feel that he is indeed totally and permanently disabled since his now dominant left hand is weak and painful and has lost significant strength at the elbow as well. However, I was only asked to comment on this particular workman's compensation claim. * * *
Based solely on these three conditions of the left elbow, I do not feel that this would be enough to claim that this gentleman is totally and permanently disabled. I feel that combining these two claims obviously would allow this but unfortunately I cannot do that. I would assume that the doctor who has cared for his right upper extremity in the past would need to give you input regarding disability. Again, I feel that if the conditions of both of his upper extremities are taken into account, he would be permanently and totally disabled.
 {¶ 15} 4. The record also contains the December 6, 2004 report of Dr. J.L. Stychno who opined as follows based upon all of the allowed conditions in both claims:
Based on today's history, physical examination, allowed conditions and the AMA Guides to the Evaluation of Permanent Impairment 5th edition, Mr. Ziegler is permanently and totally disabled and not capable of performing sustained, gainful remunerative employment, as a direct result of the above noted injuries and is not expected to recover. His condition is permanent.
 {¶ 16} 5. The record also contains a February 23, 2005 report of Dr. John L. Dunne who examined relator relative to both claims. After providing his physical findings, Dr. Dunne opined that all of claimant's allowed conditions had reached maximum medical improvement ("MMI") and that the combined impairments from both claims prevent claimant from being able to perform any type of physical work activity because claimant does not have enough residual function of the left upper extremity to engage in any sustained remunerative employment activities. Dr. Dunne opined that claimant had a 61 percent impairment for total loss of his right hand and a ten percent impairment of the whole person for the 1993 claim to his left arm combined for a total of an 84 percent impairment of the whole person for all of the allowed conditions in both claims. Dr. Dunne specifically opined that claimant was not capable of physical work activity at all.
 {¶ 17} 6. The record also contains the February 4, 2005 report of Dr. Oscar F. Sterle who opined that claimant had a 55 percent whole person impairment relative to the right hand combined with a nine percent impairment relative to the skin graft of his abdomen which equates to 59 percent impairment of the whole person with regard to the allowed conditions in the claim involving US Gypsum. Dr. Sterle opined that claimant had a zero percent impairment of the whole person relative to the injury to his left elbow and opined that claimant was capable of work activity.
 {¶ 18} 7. Claimant's application for PTD compensation was originally reviewed by a staff hearing officer ("SHO") who issued a tentative order mailed April 1, 2005 and a corrected tentative order mailed April 5, 2005. The orders are identical in all respects which are material to the within action. The SHO tentatively allocated the award as follows:
100% of the award is to be allocated to claim #L254897-22. [left limb — relator is the employer] 0% of the award is to be allocated to claim #631616-22. [right limb — U.S. Gypsum is the employer].
 {¶ 19} 8. By letter dated April 7, 2005, counsel for relator objected to the tentative order mailed April 5, 2005.
 {¶ 20} 9. The matter was heard before an SHO on September 20, 2005, and resulted in an order awarding claimant PTD compensation and allocating the PTD award 50 percent for each of the two claims. The SHO order provides the following relevant explanation regarding the allocation:
This order is based upon the reports of Drs. Steele, Uberti, Stychno, as well as Dr. Dunne, all of whom indicate that the Injured Worker is permanently totally disabled and unable to engage in any sustained remunerative employment.
* * *
Permanent total disability benefits are to commence 10/24/2003, the date of Dr. Steele's report, which is the first reliable medical report indicating the Injured Worker is permanently totally disabled.
It is further ordered that the above award be allocated as follows:
50% of the award is to be paid under Claim Number L254897-22
50% of the award is to be paid under Claim Number 631616-22
The Staff Hearing Officer based his award on the medical reports of Drs. Steele, Uberti, Stychno and Dr. Dunne. Drs. Steele and Stychno examined Injured Worker on both files and make no determination as to the "breakdown" regarding percentage of impairment in each file. On the other hand, Dr. Dunne is of the opinion that the bulk of the impairment should be made in claim #631616-22 while Dr. Uberti is of the opinion that the bulk should be placed in Claim #L254897-22.
The Staff Hearing Officer finds and orders that it is the injuries in Claim #L254897-22 which prevent the Injured Worker from returning to his former position of employment, but that it is the allowed "total loss of right hand" condition in Claim #631616-22 which prevents him from performing more sedentary work, and, therefore, apportions compensation equally and between those two claims.
 {¶ 21} 10. Relator's motion for reconsideration and US Gypsum's motion for reconsideration were both denied, one by commission order mailed October 15, 2005, and the second by commission order mailed October 20, 2005.
 {¶ 22} hereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} Relator does not contest claimant's entitlement to PTD compensation. Instead, relator challenges the commission's decision to allocate 50 percent of the award to claim No. 631616-22 (involving the loss of claimant's right hand and involving US Gypsum as the employer), and 50 percent of the award to claim No. L254897-22 (involving claimant's left elbow and where relator is the employer). Relator contends that the commission's decision is not supported by any evidence in the claim file nor is it supported by the evidence cited by the commission. Relator contends that, at a maximum, only 14 percent of the claimant's PTD award should be allocated to the claim involving relator while 86 percent of the award should be allocated to US Gypsum. Relator bases this conclusion upon the report of Dr. Dunne and this court's decision in State ex rel.The Danis Companies v. Indus. Comm., Franklin App. No. 03AP-1022, 2004-Ohio-5252.
 {¶ 25} In the Danis Companies case, the claimant had sustained three separate work-related injuries. Two of those injuries occurred while the claimant was employed by Danis. In allocating the claimant's PTD award, the commission had allocated 20 percent of the award to one of the Danis claims and 15 percent of the award to the second of the Danis claims. The commission explained its decision by indicating that the allocation was based on an extrapolation of the permanent partial impairment ratings provided by Drs. Kearns, Murphy and Corriveau.
 {¶ 26} In its mandamus action, Danis had argued that the commission abused its discretion by attributing any responsibility to the claimant's claims involving Danis as the employer and that the commission's order violated the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. This court disagreed with Danis' argument.
 {¶ 27} In reviewing the evidence, this court noted that Dr. Kearns had concluded that claimant had reached MMI with regard to his Danis claims and that the claimant had some residual problems. Dr. Kearns accessed a 12 percent whole person permanent partial impairment rating for all of the claimant's allowed conditions sustained while working for Danis. Dr. Kearns also opined that, as a result of those conditions, the claimant would not be able to perform his unrestricted duty work but could perform some limited work activity. Dr. Murphy examined claimant for the allowed psychological conditions involved in his claim with a different employer and accessed a 12 percent permanent partial impairment from that claim. Dr. Corriveau, a pulmonary specialist, examined claimant for his respiratory conditions involving the other employer and indicated that the claimant had a 10 percent impairment from that condition.
 {¶ 28} Ultimately, the commission did allocate part of the claimant's PTD award to Danis because Dr. Kearns had indicated that claimant had some residual problems as a result of those allowed conditions and that those allowed conditions inhibited the claimant's ability to work in the future. Further, the commission did specifically use the percentage of permanent partial impairment noted by the doctors in ultimately determining what the allocation of the award would be.
 {¶ 29} Relator uses the Danis Companies case to argue that the commission was and is required to use permanent partial impairment ratings to allocate PTD awards. However, this court's conclusion that the commission did not abuse its discretion in the Danis Companies case by using the percentage of impairment ratings in calculating the PTD award does not correspond to a holding from this court that the commission is required to do so. In State ex rel. Hay v. Indus. Comm. (1990), 52 Ohio St.3d 99, the Supreme Court of Ohio stated as follows: * * * "As we have often stated, a permanent total disability is not measured numerically but is instead based on the claimant's ability to engage in sustained remunerative employment. State, ex rel.Jennings, v. Indus. Comm. (1982), 1 Ohio St. 3d 101."
 {¶ 30} In the present case, the claimant had a total loss of his right hand during the course of his employment with US Gypsum. At the time, claimant was right hand dominant. In spite of the loss of his right hand, claimant was able to secure other employment, and, in fact, claimant became very adept at utilizing his left arm and hand for almost everything. The evidence shows that claimant rarely utilizes a prosthetic device for his right hand for various reasons, including the fact that he has not needed to. Thereafter, claimant sustained an injury to his left elbow. According to the medical evidence in the record, claimant has significantly reduced strength in his left hand and now is impaired from being able to perform tasks which he has been performing ever since he lost his right hand in 1977. Claimant presented evidence which demonstrated that both of his hands were/are equally functional.
 {¶ 31} Part of relator's argument appears to be that, in claimant's case, obviously the loss of use of his left hand cannot be that significant because claimant was able to get along fine with only one hand after he lost his right hand. However, relator's argument completely ignores the fact that claimant does not have a right hand which he can use to compensate for his limited ability to use his left hand. The fact that claimant was able to secure other employment after losing his right hand constitutes some evidence that the loss of use of one hand, in and of itself, did not render this claimant permanently and totally disabled from some sustained remunerative employment. Conversely, the claimant's loss of the full use of his left hand and arm, in and of itself, does not render this claimant permanently and totally disabled from all sustained remunerative employment. However, the doctors' reports in the record cited by the commission make it clear that the combined effect of claimant's loss of his right hand and the restricted use he now has of his left hand and arm render him permanently and totally disabled from all sustained remunerative employment. As such, this magistrate concludes that the commission did not abuse its discretion when it allocated 50 percent of claimant's PTD award between the two employers and further finds that the commission's explanation meets the requirements of Noll and does not violate any of the cases which provide instruction on the issue of what evidence the commission can consider in determining how to allocate a PTD award between different claims including different employers.
 {¶ 32} Relator also points out that the commission misstated Dr. Uberti's opinions when stating that Dr. Uberti attributed the bulk of claimant's impairment to his left arm conditions. Relator contends that, as such, this court can only look at the report of Dr. Dunne who attributed the majority of impairment to claimant's right hand conditions. Relator asserts that there is no other evidence in the record upon which the commission could rely. This magistrate disagrees.
 {¶ 33} As stated previously, the evidence in the record demonstrates that claimant's ability to utilize both hands demonstrates and is evidence that both of his hands were equally functional. Contrary to relator's arguments, the magistrate finds that this is "some evidence" upon which the commission could and did rely.
 {¶ 34} US Gypsum has filed a brief in this case asserting that the commission did not have jurisdiction to reconsider its tentative order allocating 100 percent of claimant's PTD award to Kelly Services. This magistrate disagrees. Kelly Services (relator herein) objected to the tentative order and sent a copy of that objection to counsel for US Gypsum. Further, counsel for US Gypsum appeared at the September 20, 2005 hearing and had the opportunity to argue and challenge the award. Also, US Gypsum has failed to properly challenge the commission's order in this court.
 {¶ 35} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in allocating 50 percent of the claimant's permanent total disability award to relator and relator's request for writ of mandamus should be denied.