THE STATE EX REL. GEORGE, APPELLEE, *v.* INDUSTRIAL

COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. George v. Indus. Comm.,*

130 Ohio St.3d 405, 2011-Ohio-6036.]

*Workers' compensation—Evidence—Inconsistencies in medical reports.*

(No. 2010-1841—Submitted October 18, 2011—Decided November 30, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-1099,

2010-Ohio-4320.

_____

**Per Curiam**.

{¶ 1} Appellant Industrial Commission of Ohio denied appellee's, Matthew T. George's, request to authorize further shoulder surgery, after finding that the proposed procedure was unrelated to the conditions allowed in his workers' compensation claim. That denial is now at issue.

{¶ 2} George's workers' compensation claim has been allowed exclusively for right shoulder conditions. Surgery for those conditions was first performed by Dr. Larry W. Watson in 2004. The procedure yielded good results, and George returned to work with appellant Honda of America Manufacturing, Inc., without medical restriction.

{¶ 3} George had no further treatment to his right shoulder until February 2008, when he returned to Dr. Watson with renewed shoulder complaints. Watson felt that these symptoms were related to the industrial injury, and he asked self-insured Honda to add new shoulder conditions to the claim and to authorize shoulder surgery to correct them.

{¶ 4} An independent medical examination was performed by Dr. Christopher Holzaepfel in response to these requests. Holzaepfel did not believe that George's shoulder complaints were related to the industrial injury, stressing

George's successful recovery from his earlier surgery, his return to Honda without restriction, and his 3½ years without treatment. Holzaepfel felt instead that George's symptoms were related to his work with a property-management company—a job taken after George left Honda for undisclosed reasons.

{¶ 5} Honda also had George medically examined by Dr. Walter H. Hauser. Hauser found nothing wrong with George's right shoulder, with every facet of his examination eliciting normal results. The exam did, however, reveal a ruptured biceps tendon, which is not allowed in the claim. Hauser believed that this biceps rupture was the source of George's complaints and would not be corrected by further shoulder surgery:

{¶ 6} "Therefore, it is my opinion, after taking a history, physical examination, and accepting his current allowed conditions in this claim, that he has been a very active individual. This is confirmed by the records. Surveillance indicates that he has been able to use his right shoulder in a very active manner. He has no objective findings on his physical examination other than the rupture of the biceps tendon. It is my opinion that the rupture is totally unrelated to his work-related injury on 10/02/2003, but to his subsequent activities, including his workouts at the health club. Once a biceps tendon has been ruptured, there is no indication to do an open repair at this time, and certainly not based on his original injury on 10/02/2003. He has excellent strength in his upper extremities, and no impairment that can be noted judging by his activities on the surveillance video. There is no need to repair his rotator cuff and, hence, in my opinion, absolutely no reason for any further surgery and certainly not for the allowed conditions in this claim, which were resolved with his prior surgery."

{¶ 7} Honda would not authorize shoulder surgery based on Hauser's report. The commission also denied the surgical request based on that same document.

{¶ 8} George filed a complaint in mandamus in the Court of Appeals for Franklin County. The appellate court granted a limited writ that ordered the

commission to reconsider the application, after finding "troubling inconsistencies" within Hauser's report that it believed disqualified the report from evidentiary consideration. *State ex rel. George v. Indus. Comm.*, 10th Dist. No. 09AP-1099, 2010-Ohio-4320, at ¶ 17.

{¶ 9} This cause is now before this court on appeals as of right by Honda and the commission.

{¶ 10} Authorization for medical treatment requires a causal relationship between the allowed conditions and the proposed services. *State ex rel. Miller v. Indus. Comm.* (1994), 71 Ohio St.3d 229, 643 N.E.2d 113. The commission did not find a causal connection in this case, based on Hauser's report. The evidentiary viability of that report is the sole issue now presented.

{¶ 11} The commission is exclusively responsible for assessing the weight and credibility of evidence. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. It need cite only evidence in support of its decision, and the presence of contrary evidence is immaterial. *Burley*; *State ex rel. West v. Indus. Comm.* (1996), 74 Ohio St.3d 354, 658 N.E.2d 780. It cannot, however, rely on a medical opinion that is equivocal or internally inconsistent. *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 640 N.E.2d 815; *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 633 N.E.2d 528.

{¶ 12} The court of appeals found that Hauser's report could not support the commission's decision, because it was internally inconsistent in four respects. The court's analysis, however, either ignores or misinterprets our decisions in *Eberhardt*, *Lopez*, and *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372.

{¶ 13} *Eberhardt* and *Lopez* were variations on the same theme—medical opinions that were contradicted by or inconsistent with other statements that the doctor had made either in a previous report or within the same report. In *Lopez*, the challenged physician's report indicated that the claimant had a very high

degree of impairment, but then concluded that he could perform heavy foundry labor. We found that the report could not be relied upon to support denial of compensation for permanent total disability, because both statements were relevant to the question of the claimant's ability to work, yet neither could be reconciled with the other, undermining the reliability of the document as a whole.

{¶ 14} In *Eberhardt*, the claimant's attending physician indicated that unless a physical rehabilitation program was approved, there was nothing more he could do to help his patient. A commission regional board of review interpreted that statement as evidence of maximum medical improvement and used it to deny temporary-total-disability compensation. In response, the doctor prepared a second report that clarified that he did not believe that the claimant's condition was permanent, because it could be improved through rehabilitation. On appeal, however, the commission affirmed the denial of compensation based on the same evidence.

{¶ 15} The two reports were the focus of litigation before this court, which gave us an opportunity to discuss the important distinction between equivocal opinions and those that were simply ambiguous. Equivocation disqualifies an opinion from consideration and occurs "when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Eberhardt*, 70 Ohio St.3d at 657, 640 N.E.2d 815. Ambiguous remarks, on the other hand, "are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position *on a critical issue*. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to *Jennings* or to commission rejection, we

4

would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence." (Emphasis added.) Id., citing *State ex rel. Jennings v. Indus. Comm.* (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420.

{¶ 16} *Eberhardt* cautioned against an overzealous approach to discarding a medical report simply because two statements in it, irrespective of context, are inconsistent. Instead, we are asked to consider whether the inconsistency is germane to the purpose of the medical exam—what *Eberhardt* referred to as the critical issue. In *Lopez* and *Eberhardt*, the doctors were asked to determine whether the claimants satisfied the medical criteria for the type of total-disability compensation being sought. Accordingly, clarity on the issue of claimant's work capacity was critical in *Lopez* (permanent total disability), as was the temporary nature of the disability in *Eberhardt* (temporary total disability). Had the inconsistency been one in which the date of injury, for example, had been listed as both 2001 and 2003, it is highly improbable that anyone would have insisted that either report be discarded. Those facts were simply irrelevant to the question asked in both cases.

{¶ 17} The alleged inconsistencies in this case fall into the latter category. The critical question asked of Hauser was whether additional shoulder surgery was necessary. Hauser opined that it was not, because his physical examination revealed nothing wrong with George's shoulder. Accordingly, the presence of inconsistencies within his report that do not contradict that critical opinion are harmless. This includes Hauser's reference to George's first visit with Dr. Watson as having occurred in both 2003 and 2008. It also includes his comment on a lack of available medical information after discussing in detail all the medical reports in the file.

**{¶ 18}** The court of appeals also erred in accusing Hauser of failing to accept all the allowed conditions. To the contrary, Hauser listed all of the allowed conditions and expressly stated his acceptance of them. He simply felt that these conditions had resolved, a conclusion that, under *Domjancic*, does not equate to nonacceptance. Moreover, it does not matter *when* Hauser believed the conditions resolved—another criticism leveled by the court of appeals. It is not germane to his conclusion that George's physical examination revealed no shoulder abnormalities.

**{¶ 19}** Ultimately, none of the alleged inconsistencies noted in the Hauser report affect the viability of the doctor's opinion that further surgery is not reasonably related to the allowed conditions. The report is therefore evidence supporting the commission's decision.

**{¶ 20}** The judgment of the court of appeals is reversed.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Charles Zamora Co., L.P.A., and Karen D. Turano, for appellee.

Michael DeWine, Attorney General, and Sandra E. Pinkerton, Assistant Attorney General, for appellant Industrial Commission of Ohio.

Vorys, Sater, Seymour & Pease, L.L.P., and Robert A Minor, for appellant Honda of America Manufacturing, Inc.

_____