[Cite as *State ex rel. Smith v. Thomas/Sysco Food Serv.*, 2014-Ohio-1641.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Marvin Smith, | : | |
| Relator, | : | |
| v. | : | No. 13AP-37 |
| Thomas/Sysco Food Service and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 17, 2014

*Casper & Casper,* and *Ronald M. Kabakoff,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Marvin Smith, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to find that he is entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and recommendation that includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Relator has

filed objections to the magistrate's decision, and the matter is now before us for our independent review.

{¶ 3} As reflected in the facts given in the magistrate's decision, claimant was involved in a work-related injury on May 3, 1990. Claimant's industrial claim has been allowed for the following conditions: lumbar sprain, aggravation of pre-existing degenerative disc disease, and bulging intervertebral at L5-S1.

{¶ 4} Relator filed an application for PTD compensation on November 11, 2011. At the commission's request, Dr. Thomas Forte conducted a medical examination of relator on April 19, 2012. Dr. Forte concluded that relator was capable of performing sedentary work.

{¶ 5} The application came before a staff hearing officer ("SHO") for a hearing on August 7, 2012. The SHO relied on the medical report of Dr. Forte to conclude that claimant was able to engage in sustained remunerative employment. Accordingly, the SHO denied the application for PTD compensation.

{¶ 6} The magistrate determined that Dr. Forte's narrative report and physical strength rating form were not equivocal or inconsistent. The magistrate thus concluded that Dr. Forte's report and physical strength rating form were some evidence which the commission could rely on to deny relator's application for PTD compensation. Relator presents the following objections to the magistrate's decision:

> 1. The Magistrate erred in finding that Dr. Forte's report was internally consistent.
>
> 2. The Magistrate erred in finding that Dr. Forte's report constitutes some evidence to support the denial of PTD.

{¶ 7} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consolidated Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear

legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 8} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 9} The relevant inquiry in a determination of PTD is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjacic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994); Ohio Adm.Code 4121-3-34(B)(1). An individual can engage in sustained remunerative employment if they can perform sedentary work. Sedentary work means "exerting up to ten pounds of force occasionally * * * and/or a negligible amount of force frequently * * * to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." Ohio Adm.Code 4121-3-34(B)(2)(a).

{¶ 10} In his first objection, relator asserts that the magistrate erred by not finding that Dr. Forte's report was internally inconsistent. Equivocal or internally inconsistent medical reports do not constitute some evidence upon which the commission can rely. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994); *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72 (1983). Equivocation "occurs 'when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.' " *State ex rel. George v. Indus. Comm.,* 130 Ohio St.3d 405, 407, 2011-Ohio-6036, ¶ 15, quoting *Eberhardt* at 657.

{¶ 11} Relator asserts that "Dr. Forte's report clearly states twice that further restrictions will be listed on the Physical Strength Rating Form," and notes that, if Dr. Forte "had actually listed restrictions it would have been highly relevant as to whether Mr. Smith had the capacity to return to work." (Objections to Magistrate's Decision, 5.) Relator appears to assert that, as Dr. Forte's report indicated that restrictions would be

listed on the physical strength rating form, and the form did not list those restrictions, Dr. Forte's report is inconsistent.

{¶ 12} The magistrate concluded that Dr. Forte did set forth limitations on the physical strength rating form, as Dr. Forte had checked the box indicating that relator was only capable of performing sedentary work. The physical strength rating form then provided the Ohio Adm.Code 4121-3-34(B)(2)(a) definition of sedentary work, indicating that the injured worker can only exert up to ten pounds of force and is restricted to sitting most of the time, but can walk or stand for brief periods of time.

{¶ 13} Dr. Forte's report indicates that the sedentary work restrictions are necessary "based upon [relator's] limited and painful lumbar range of motion, right lower extremity weakness, and altered sensation." (Stip.R. 46.) Dr. Forte noted that relator arrived to his appointment "in a wheelchair" and that relator had indicated "that he utilized a wheelchair when he anticipated anything other than a very short distance walking." (Stip.R. 46.) Dr. Forte noted that relator was able to walk around the exam room by using "a cane or by holding onto furniture in the exam room." (Stip.R. 46.) There is nothing in Dr. Forte's report which contradicts the findings on the physical strength rating form or which is inconsistent with the limitations contained in the definition of sedentary work. *Compare State ex rel. Ingersoll Rand Co. v. Indus. Comm.*, 10th Dist. No. 10AP-254, 2010-Ohio-5362, ¶ 3 (finding a report was internally inconsistent because the doctor's "statement that claimant was unemployable due to pain and severe neck limitations was in direct conflict with his earlier statement that claimant could perform sedentary work"). Accordingly, we find that Dr. Forte's report is not internally inconsistent. Relator's first objection is overruled.

{¶ 14} Relator's second objection to the magistrate's decision asserts that Dr. Forte's report cannot be considered some evidence if it is found to be internally inconsistent. As we have found that Dr. Forte's report was not internally inconsistent, Dr. Forte's report was some evidence to support the denial of relator's application for PTD compensation. Accordingly, relator's second objection is overruled.

{¶ 15} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact

and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

KLATT and O'GRADY, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Marvin Smith, | : | |
| Relator, | : | |
| | : | No. 13AP-37 |
| v. | : | (REGULAR CALENDAR) |
| Thomas/Sysco Food Service and Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 26, 2013

---

*Casper & Casper,* and *Ronald M. Kabakoff,* for relator.

*Michael DeWine*, Attorney General, and *Naveen V. Ramprasad,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 16} In this original action, relator, Marvin Smith, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 17} 1. On May 3, 1990, relator sustained an industrial injury while employed as a truck driver for respondent Thomas/Sysco Food Service, a state-fund employer.

{¶ 18} 2. The industrial claim (No. 90-36219) is allowed for: "[l]umbar sprain; aggravation of pre-existing degenerative disc disease; bulging intervertebral at L5-S1."

{¶ 19} 3. On November 11, 2011, relator filed an application for PTD compensation.

{¶ 20} 4. On April 19, 2012, at the commission's request, relator was examined by Thomas E. Forte, D.O. In his six-page narrative report, Dr. Forte states:

**PHYSICAL EXAMINATION:**

GENERAL: Mr. Smith was a pleasant, cooperative male who exhibited some overt pain behaviors, and sat or stood through the interview in some apparent distress with the need to change/adjust his position intermittently. The injured worker was accompanied by his wife who was present during the interview and examination. His height was 5 foot 10 inches, weight 206 pounds. Blood pressure 161/85, pulse 80 and regular, respirations 16 and unlabored. He and his wife indicated they would check his blood pressure at home and communicate with his family physician regarding her [sic] blood pressure.

LUMBAR SPINE: There was a flat lordosis of the lumbar spine. Palpation of the lumbar paraspinal muscles elicited moderate tenderness diffusely. There was both moderate guarding and mild spasm of the paraspinal musculature. Palpation of the lumbar spine elicited moderate tenderness at L4-sacrum. There were multiple well-healed surgical scars associated with lumbar surgeries, including a midline 7.5 cm scar and bilateral paralumbar 4 cm scars. There were no Waddell's signs present. The Patrick's (FABER) test was negative bilaterally[.] Sitting up from lying position was accomplished using abdominal muscles with a modified log-roll maneuver. Footwear was put on and taken off by his wife. There was a level pelvis, without scoliosis, with no significant leg length difference. He reported pain with all lumbar motions throughout the range of motion.

Lumbar Spine- Range of motion (in degrees):
Flexion- true lumbar: 18, sacral flex= 15 [Impairment varies w/ scaral ROM]
Extension- true lumbar: 0, sacral ext= 0 [Possible ROM-based impairment, if <23]
Right side bending: 10 [Possible ROM-based impairment, if <23]
Left side bending: 12 [Possible ROM-based impairment, if <23]

The seated straight leg raising was accomplished to 65 degrees bilaterally. The lying straight leg raising testing resulted in low back and ipsilateral posterior thigh pain at 35 degrees on the right and low back pain at 40 degrees on the left.

LOWER EXTREMITY NEUROLOGIC: The strength in the lower extremities was normal (5 out of 5) throughout the left lower extremity, but there was grade 4/5 weakness of right foot dorsiflexion and right knee extension, without a foot drop. There was no give-way weakness. Lower extremity sensation was intact to all modalities for the left lower extremity, but there was altered sharp/dull discrimination along the posterior aspect of the right thigh, the medial aspect of the right calf, the lateral aspect of the right foot, and the lateral 3 toes of the right foot. The patellar reflexes were 1+ on the right, and 2+ on the left. The ankle reflexes were absent on the right, and 1+ on the left. There was no atrophy in either of the thighs, but there was 0.7 cm of right calf atrophy. There were no observed involuntary movements.

GAIT and STATION: The injured worker arrived in a wheelchair and indicated that he utilized a wheelchair when he anticipated anything other than very short distance walking. The gait and station were antalgic, with the injured worker leaning forward at the waist approximately 15 degrees, and moving about the room holding onto various pieces of furniture and/or utilizing his cane. Walking was performed only with a cane or by holding onto furniture in the exam room. Walking on the heels and toes was not tested, due to his right lower extremity weakness and his antalgic gait pattern. The Romberg test was not tested. Transfer to the exam table was accomplished with moderate apparent difficulty.

**DISCUSSION:** Marvin Smith has allowed conditions from a single claim being evaluated in this report.

Mr. Smith has already undergone 2 lumbar surgeries, physical therapy, various injections, and the medication regimen has been optimized. The allowed physical conditions in the claims have stabilized to the point that no major medical change can be expected, despite any continuing medical treatment or rehabilitative programs in which the injured worker may participate.

Based only on the allowed physical conditions evaluated in this report and not considering the worker's age, education, and work history, the worker's physical limitations are outlined in the PHYSICAL STRENGTH RATING FORM below. These lifting, standing, running, repetitive motion, and sitting limitations are necessary due to the allowed back conditions in the claim addressed in this report, and these limitations based upon his limited and painful lumbar range of motion, right lower extremity weakness, and altered sensation.

**OPINION:** Based solely on today's history and physical examination, review of the records provided, and based only on the allowed conditions I have been asked to consider, and considering only the physical conditions allowed:

*[One] Has the injured worker reached maximum medical improvement (MMI) with regard to each specified allowed condition? Briefly describe the rationale for your opinion.*

Yes. Please refer to the narrative DISCUSSION: section above. The injured worker is on a stable medication regimen, has no pending invasive procedures, and is currently receiving supportive medical care for the allowed conditions in the claim. Therefore, he has reached maximum medical improvement for the allowed conditions in the claim.

*[Two] Based on the American Medical Association's Guides to the Evaluation of Permanent Impairment - 5th Edition, with reference to the Industrial Commission Medical Examination Manual, provide the estimated percentage of whole person impairment arising from each allowed condition. Please list each condition and whole person impairment separately, and then provide the combined whole person impairment. If there is no impairment, indicate zero percent.*

[A table is omitted.]

The amount of pain was disproportionate for what is expected with the allowed conditions in the claim and their associated impairment as calculated above, so 3 percent additional impairment for pain was combined into the impairment rating.

It is my opinion that the combined whole person impairment for the allowed physical conditions (which I have been asked to address in this report) in the claim(s) is the percentage in the bottom right corner of the table above.

*[Three] Complete the enclosed Physical Strength Rating form. In your narrative report provide a discussion setting forth physical limitations resulting from the allowed condition(s).*

The PHYSICAL STRENGTH RATING form is completed and enclosed. These lifting, standing, running, repetitive motion, and sitting limitations are necessary due to the allowed back conditions in the claim addressed in this report. Please refer to the narrative DISCUSSION: section above regarding the rationale for the physical limitations.

(Emphasis sic.)

{¶ 21} 5. On April 19, 2012, Dr. Forte completed a Physical Strength Rating form. On the form, Dr. Forte indicated by his mark that relator is capable of "Sedentary Work."

The form presents the definition of sedentary work:

Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and / or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Responding to the preprinted query "FURTHER limitations, if indicated," Dr. Forte wrote: "None. Please refer to the narrative DISCUSSION: section above regarding the rationale for the physical limitations." (Emphasis sic.)

{¶ 22} 6. Following an August 7, 2012 hearing, a staff hearing officer ("SHO") issued an order denying relator's application for PTD compensation. The SHO's order explains:

It is the order of the Hearing Officer that the Application for Permanent Total Disability, filed on 11/11/2011, is denied.

The Injured Worker suffered the injury recognized in this claim on 05/03/1990 when he was employed with the named Employer as a transportation driver. On the date of injury, he was coming down a ramp with a two-wheeler when he slipped. At the time of the injury, the two-wheeler was loaded up with product. The claim was recognized initially for a sprain condition and was subsequently amended to include degenerative disc disease and a bulging disc at L5-S1. The Injured Worker underwent a surgical procedure consisting of a laminectomy in March of 1992. The Injured Worker was able to return to work for a different Employer working as a Delivery Driver. The allowed conditions in this claim are limited to conditions involving the Injured Worker's lumbar spine.

The Injured Worker continued to work up until 2003. He had a subsequent injury involving his shoulder during his period of employment with his employer. The Injured Worker had a second surgical procedure in this claim on his low back area in 2009. That surgical procedure consisted of a discectomy and fusion at the L5-S1 area. The Injured Worker has not worked since that second surgical procedure.

The Injured Worker was examined at the request of the Industrial Commission by Dr. Thomas Forte on 04/19/2012. Dr. Forte performed a physical examination of the Injured Worker and reviewed selected medical records for this claim file.

He noted the two surgical procedures as well as the subsequent pain management treatment including medications, epidural injections, physical therapy. Dr. Forte stated that the Injured Worker was in a wheelchair on the date of the exam. The Injured Worker told Dr. Forte that he used a wheelchair when he was traveling anywhere that involved more than a very short distance of walking. He was able to get out of the wheelchair and walk using a cane during the examination. Dr. Forte stated that the Injured Worker has reached maximum medical improvement for the recognized conditions in the claim. He stated that the Injured Worker was stable in terms of his medication regimen and has no pending invasive procedures. Dr. Forte indicated that the Injured Worker has a 30% whole person

impairment as a result of the allowed conditions in the claim. On a Physical Strength Rating form attached to his report, Dr. Forte stated that the Injured Worker was capable of performing sedentary work activity when considering the allowed conditions.

Sedentary work is defined by the Industrial Commission as exerting up to ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. Dr. Forte explained that the Injured Worker has these restrictions as the result of his limited and painful lumbar range of motion, his right lower extremity weakness and altered sensation.

The Hearing Officer finds that the Injured Worker has reached maximum medical improvement for the allowed conditions in this claim. The Hearing Officer finds that the Injured Worker is unable to return to his former position of employment as a driver as the result of the allowed low back conditions. However, the Hearing Officer finds that the Injured Worker retains the residual functional capacity to perform sedentary work activity. In making this finding, the Hearing Officer relies upon the findings and the opinion from Dr. Forte.

The Injured Worker's attorney argued that Dr. Forte's report was defective because he indicated that the Injured Worker's physical limitations would be set forth on a Physical Strength Rating form and then indicated on the Physical Strength Rating form that the narrative report would discuss the rationale for the physical limitations. The Injured Worker's attorney argued that Dr. Forte's opinion was unclear as to the Injured Worker's physical limitations. The Hearing Officer rejects this argument and finds that Dr. Forte sets forth the physical limitations by indicating that the Injured Worker can perform sedentary work activity. On the Physical Strength Rating form, he indicated that the narrative report would set forth the rationale for the noted physical limitations. The body of the report does contain Dr. Forte's opinion as to the basis for the sedentary work restrictions. The Hearing Officer finds that Dr. Forte's report is not defective.

The Injured Worker is currently 60 years of age. He is a high school graduate having completed high school in 1971. Following his high school graduation, he attended Laurel Oaks truck driver training. He testified at hearing that he performed well in this training program. On the application, he indicated that he is able to read, write, and perform basic math. His previous work history involves approximately 30 years of work as a truck driver.

The Hearing Officer finds that the Injured Worker's age of 60 years is a neutral vocational factor which would be neither a barrier nor an asset to him in attempting a return to the workforce. An extensive re-training program would not be appropriate for him, but he could undergo short-term, on-the-job training to learn a new job. The Hearing Officer finds that the Injured Worker's education level is a positive vocational factor. The Injured Worker is [a] high school graduate and did attend vocational training after his high school graduation. He is able to read, write, and perform basic math. The Hearing Officer finds that the Injured Worker has demonstrated the intellectual capacity to obtain his degree and pursue further training. The Hearing Officer finds that the Injured Worker's previous work history is a neutral vocational factor. The Injured Worker demonstrated a relatively long work history with several different employers. He worked only as a truck driver with varying degrees of required physical exertion besides the driving requirements. However, the Injured Worker demonstrated the determination and resourcefulness to return to work with a different employer following this injury and his first surgical procedure. The Injured Worker has not worked since 2003. However, the Hearing Officer finds that the reason he left the workforce in 2003 was not related to this industrial injury.

Based upon the Injured Worker's ability to return to sedentary work activity and his education level as a high school graduate, the Hearing Officer finds that the Injured Worker is capable of performing the duties of sustained remunerative employment. Therefore, the Hearing Officer finds that the Injured Worker is not permanently and totally disabled.

The Application for Permanent and Total disability, filed on 11/11/2011 is hereby denied.

This order is based upon the medical report from Dr. Forte dated 04/19/2012.

{¶ 23} 7. On October 10, 2012, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 24} 8. On January 14, 2013, relator, Marvin Smith, filed this mandamus action.

Conclusions of Law:

{¶ 25} The sole issue is whether the report of Dr. Forte is some evidence upon which the commission can rely to support its determination that "residual functional capacity" is at the sedentary level.  Ohio Adm.Code 4121-3-34(B)(4).

{¶ 26} Finding that Dr. Forte's report provides the some evidence supporting the commission's determination of residual functional capacity, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 27} Equivocal medical opinions are not evidence.  *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994).  Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions or fails to clarify an ambiguous statement.  *Id.*

{¶ 28} A medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely.  *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995).  However, a court will not second-guess a doctor's medical expertise to support a claim of internal inconsistency.  *State ex rel. Young v. Indus. Comm.*, 79 Ohio St.3d 484 (1997).

{¶ 29} Here, relator argues that Dr. Forte's report is equivocal and internally inconsistent:

> Dr. Thomas Forte strongly implied that he was going to find additional restrictions as well. In the Physical Examination Section of his report, he noted problems with muscle spasm, restrictions on range of motion, positive straight leg raising, decrease in sensation in the right lower extremity, and difficulty walking. * * * In the Discussion Portion of his report, he mentioned two surgeries, found that the condition had stabilized, and then stated that the physical limitations would be outlined in the Physical Strength Rating Form

below. "These lifting, standing, running, repetitive motion, and sitting limitations are necessary due to the allowed back conditions in the claim addressed in this report, and these limitations base upon his limited and painful lumbar range of motion, right lower extremity weakness, and altered sensation."

At the end of his report, he stated that the rationale for the physical limitations were to be found in the Discussion Section of the report. * * * On the Physical Strength Rating form, he stated there were no limitations beyond sedentary work and the rationale was in the Discussion Section. * * * His report was like a circle, it kept going round and round, and there was no end to it. It was ambiguous and contradictory.

(Relator's brief, at 10-11.)

{¶ 30} Relator's argument lacks merit. There is no inconsistency or equivocation between Dr. Forte's narrative report and his completion of the physical strength rating form.

{¶ 31} In the "Discussion" portion of the narrative report, Dr. Forte evaluates impairment and concludes that relator has a 30 percent whole person impairment. In the "Discussion" portion of the narrative report, Dr. Forte does note that the physical strength rating form sets forth the limitations due to the allowed conditions of the claim. Those limitations are set forth in the definition of sedentary work that Dr. Forte marked on the form.

{¶ 32} It is true that, in his physical strength rating form, Dr. Forte refers the reader back to the "Discussion" section of the narrative report.

{¶ 33} Clearly, the narrative report and the physical strength rating form are interrelated. It was thus appropriate for Dr. Forte to have each report reference the other. Regardless of the alleged circularity, there was no equivocation or internal inconsistency. Again, relator's argument lacks merit.

{¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).