[Cite as *State ex rel. Hart v. Indus. Comm.*, 2020-Ohio-1396.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Christopher W. Hart, | : | |
| | : | |
| Relator, | : | |
| | | No. 19AP-118 |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | | |
| | : | |
| Respondents. | : | |
| | : | |

---

D E C I S I O N

Rendered on April 9, 2020

---

**On brief:** *The Bainbridge Firm, LLC*, and *Casaundra L. Johnson,* for relator.

**On brief:** *Dave Yost*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

**On brief:** *Michael Soto*, for respondent City of Portsmouth.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Christopher W. Hart, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him a percentage of permanent partial disability ("PPD") award based on the report of Steven Wunder, M.D., and ordering the commission to exclude Dr. Wunder's report from evidentiary consideration, and grant him a PPD award.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate concluded relator has not demonstrated the commission abused its discretion when it relied on the report of Dr. Wunder and concluded relator did not have a percentage of impairment.  Accordingly, the magistrate recommended relator's request for a writ of mandamus be denied.

{¶ 3}  Relator filed two objections to the magistrate's decision:

[I.] The Magistrate conducted a de novo review of evidence that was not relied upon by the Industrial Commission of Ohio to find that Dr. Wunder's report was not equivocal.

[II.] The Magistrate erred in concluding Dr. Wunder's report is not equivocal or internally inconsistent.

{¶ 4}  We begin by addressing relator's second objection.  Relator argues Dr. Wunder's report contains internal inconsistencies relevant to the medical impairment assessment.  In particular, relator argues Dr. Wunder's report was equivocal because: (1) there was no explanation in the report for relator's complaints of pain in the right chest wall, and (2) the opinion was based on Table 15-2 of the American Medical Association ("AMA") Guidelines, but Dr. Wunder did not perform any testing as part of his examination.  The magistrate found Dr. Wunder's finding of no impairment was not equivocal given the nature of his examination and the lack of subjective complaints made by relator.  The magistrate rejected relator's argument that Dr. Wunder's report should be removed from evidentiary consideration.

{¶ 5}  Our "review of the commission's orders in mandamus is governed by the 'some evidence' standard." *State ex rel. Simms v. Ford Motor Co.*, 10th Dist. No. 09AP-165, 2010-Ohio-671, ¶ 4, citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197 (1986).  If a medical report is either equivocal or internally inconsistent it is not some evidence. *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994).  Equivocation "occurs 'when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.' " *George* at ¶ 15, quoting *Eberhardt* at 657.

{¶ 6} We do not find Dr. Wunder's report to be equivocal or internally inconsistent. Nor do we find Dr. Wunder's lack of testing to compromise his opinion based on Table 15-2 of the AMA Guidelines. Relator's informing Dr. Wunder that he had no restrictions on his activity is the basis of our conclusion. Relator states generally in his objections "[i]Increased pain with deep breaths and exertion has an impact on the ability to perform activity." (Relator's Obj. at 10.) However, relator informed Dr. Wunder he had no restrictions. Furthermore, the commission rejected and did not determine to be some evidence upon which it could rely, the reports of relator's doctors, Dr. John E. Ruch and Dr. Donato J. Borrillo, which determined there was a restriction on activity. Accordingly, relator's second objection is overruled.

{¶ 7} In his first objection, relator argues the magistrate erred by conducting a de novo review of the evidence by considering the reports of Drs. Ruck and Borrillo, which were not relied on by the staff hearing officer, to determine that the report of Dr. Wunder was not equivocal.

{¶ 8} The commission is the exclusive evaluator of disability. *State ex rel. Cafaro Mgt. Co. v. Indus. Comm.*, 10th Dist. No. 12AP-638, 2013-Ohio-5104, ¶ 12, citing *State ex rel. Kelly Servs., Inc. v. Indus. Comm.*, 10th Dist. No. 05AP-1192, 2006-Ohio-5868, ¶ 3, citing *State ex rel. Kirkendall v. Indus. Comm.*, 87 Ohio St.3d 182, 183 (1999). The commission relied only on the report of Dr. Wunder to support its denial of PPD. We agree with relator that it is not the job of the magistrate to conduct a de novo review of the evidence and to consider evidence which was not relied on by the commission. However, the magistrate's discussion of the other doctors' reports was for purposes of comparing relator's complaints to Drs. Ruch and Borrillo versus the complaints to Dr. Wunder. While relator complained to Drs. Ruch and Borrillo about interruption of his activity, he did not make the same complaint to Dr. Wunder. Relator informed Dr. Wunder he did not have any restrictions on his activities. And the commission relied on Dr. Wunder's report. Furthermore, we have resolved relator's second objection by only considering the report of Dr. Wunder to determine it was not equivocal and constituted some evidence on which the commission could rely. Accordingly, relator's first objection is overruled.

{¶ 9} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly

determined the pertinent facts and applied the appropriate law. We therefore overrule relator's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, relator's request for a writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

BRUNNER and NELSON, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Christopher W. Hart, | : | |
| Relator, | : | |
| v. | : | No. 19AP-118 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 7, 2019

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

*Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

*Michael Soto,* for respondent City of Portsmouth.

### IN MANDAMUS

{¶ 10} Relator, Christopher W. Hart, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him a percentage of permanent partial disability ("PPD") award based on the report of Steven Wunder, M.D., ordering the commission to exclude Dr. Wunder's report from evidentiary consideration, and grant him a PPD award.

Findings of Fact:

{¶ 11} 1. Relator sustained a work-related injury on October 17, 2017 when a dumpster hit him in the chest. Relator's workers' compensation claim would ultimately be allowed for the following conditions: "[c]ontusion right front wall thorzx, right partial lung atelectasis[1]; right lung contusion unilateral."

{¶ 12} 2. A CT scan taken November 24, 2017 revealed the following relevant impressions:

> Probable subacute healing right anterior third through fifth rib fractures. No pneumothorax identified. Moderate right pleural effusion with associated atelectasis, likely secondary hemathorax. Faint right upper lung ground-glass opacities, which may be due to recent pulmonary contusion.

{¶ 13} 3. Relator was seen by Dustin L. Johnson, M.D., on November 30, 2017. Relator indicated that his "pain will fluctuate from day to day depending on activity level or when he coughs. He rates his pain a 3/10 at this time."

{¶ 14} 4. A report of the same date signed by Rachel Passarella, FNP-C, indicates that relator had been tolerating a return to full-duty work.

{¶ 15} 5. Relator treated with Marion R. Hochstetler, Jr., M.D. In his January 3, 2018 report, relator reported the following:

> He reports shortness of breath, cough, and no other associated symptoms. He denies fevers, chills, chest pain, hemoptysis, weight loss, claudication, ischemic rest pain, and fevers, chills, chest pain, shortness of breath, cough, hemoptysis, weight loss, claudication, and ischemic rest pain. He obtained CT chest and no studies prior to this visit. His CT chest showed resolution of hemothorax and healing rib fractures. No other complaints.

{¶ 16} 6. In the February 26, 2018 report of Passarella, relator indicated that his "chest is feeling better but is now having some abdominal pain." Under the examination portion of her report, Passarella noted the following:

> Lungs: The A-P diameter is normal. Breathing effort is normal. Chest expansion is normal. The expiratory phase is normal. A friction rub is not present. Rales are not present. Wheezing is not present. Clear lung sounds.

---

[1] Indicates a collapsed lung.

Chest: An open wound is not present. An abrasion is not present. Bruising is not present. Erythema is not present. Pain to palpation. A rash is not present. Swelling is not present. Pain on motion is not present. Pain to palpation is not present.

{¶ 17} Passarella concluded as follows:

Christopher has been tolerating full duty. At this time I believe Christopher's injury related to the injury date of 10/17/2017 is healed and stable. He is now MMI for the allowed conditions. I have encouraged him to follow-up with his family care provider regarding the abdominal pain. Christopher received a copy of the Medco 14 and Instructions. He was given an opportunity to ask questions about his care. Discharged today.

{¶ 18} 7. On April 24, 2018, relator filed an application for the determination of PPD.

{¶ 19} 8. Relator was examined by Dr. Wunder. In his May 31, 2018 report, Dr. Wunder noted relator's complaints:

Currently, he indicated he has some right chest wall pain. It tends to come and go. He will notice this with a deep breath. It depends on his exertional level. He notes some pain in the morning. He does not have any restrictions on his activities. He indicated he has had pneumonia a few times and it kind of feels like that. He is not on any medication.

{¶ 20} During his examination of relator, Dr. Wunder noted the following:

He complained of some minor tenderness to palpation over the anterior chest wall, just superior and medial to the nipple line. His chest was clear. There were no rales or wheezes. His respiratory rate was 16. He had normal chest expansion without any difficulty.

{¶ 21} Dr. Wunder identified and discussed the medical records which he reviewed and then provided his conclusion that relator did not have a medical impairment as a result of the allowed conditions, stating:

The claimant does not have a medical impairment as a result of the recognized and allowed conditions in the claim. For the allowances of a contusion right front wall of thorax; partial lung atelectasis; lung contusion unilateral right, I utilized page 107, table 5-12. He had normal chest expansion and

> expiration without any restrictions. There are no restrictions on his activities of daily living.

{¶ 22} 9. In an order mailed June 13, 2018, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") relied on the report of Dr. Wunder and concluded that relator was not entitled to a percentage of PPD award.

{¶ 23} 10. Relator appealed and submitted the July 31, 2018 report of John E. Ruch, D.C. In his report, Dr. Ruch indicated that relator presented with the following complaints:

> He reports a burning sensation along the right lung/chest field. He is frequent[l]y congested with difficulty Breathing. The congestion is worse in the morning. He coughs frequently which is intermittently productive. His reports that his energy levels are low and activity is frequently interrupted due to inability to catch his breath. He notes that his body temperature is elevated upon waking in the morning and he is usually sweating.

{¶ 24} On examination, Dr. Ruch noted the following:

> Visual inspection reveals no deformity. There is tenderness to palpation along the right 3rd through 5th ribs. He is able to take a deep inhalation. Pulse rate is 78 bpm. Auscultation[2] of the lung fields reveals diminished aeration over the right upper lobe. There are no rales or gallups.

{¶ 25} In ultimately assessing a ten percent whole person impairment, Dr. Ruch noted:

> The impairment will continue to effect the claimant's ability with regard to the following common activities of daily living: Physical activity, such as any activity that requires even moderate exertion.
>
> * * *
>
> This claimant continues to experience breathing restriction and pulmonary dysfunction as a result of the recognized conditions. It is my opinion within a reasonable degree of medical certainty that the conditions are permanent in nature. I would assess a revised permanent physical impairment of 10% whole man. The impairment figures and method of rating are based on the AMA Guides to the Evaluation of Permanent

---

[2] A medical term for listening with a stethoscope.

> Impairment, 5th Edition revised using tables 5-12 page 107,
> (Class II pulmonary impairment).

(Emphasis sic.)

{¶ 26} 11. Relator's appeal was heard before a district hearing officer ("DHO") on August 29, 2018. The DHO affirmed the prior order of the administrator and, after relying on the part of Dr. Wunder, concluded that relator did not have a percentage of PPD at this time.

{¶ 27} 12. Relator appealed and submitted the October 31, 2018 report of Donato J. Borillo, M.D. At the time he met with Dr. Borillo, relator indicated that he continued to have pain and discomfort especially with deep breaths. Dr. Borillo noted the following on physical examination:

> The chest wall was tender on the right side, especially over the three through fifth ribs. He had fair expansion with some crackles at the bases.

{¶ 28} Thereafter, Dr. Borillo identified the medical records which he reviewed and assessed a ten percent whole person impairment, stating:

> For the allowed condition of lung contusion and partial lung atelectasis on the right, the ongoing medical burden and modification of activities is consistent with a three percent (3%) whole person impairment table 18-3, page 575. For the contusion of the right front wall of the thorax, we turn to page 389, table 15-4 and assign a DRE Thoracic Category-II seven percent (7%) whole person impairment. Combined whole person impairment is ten percent (10%).

13. Relator's appeal was heard before a staff hearing officer ("SHO") on December 4, 2018. The SHO relied on the report of Dr. Wunder and concluded that relator had not demonstrated that he had a percentage of PPD, stating:

> The Staff Hearing Officer affirms the District Hearing Officer's order, issued 08/31/2018 for the reason that it is supported by proof of record and is not contrary to law. Therefore, there is no basis for a percentage of permanent partial award or increase at this time and the Injured Worker's C-92 Application for the Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability is denied.

This decision is based upon the report of: Steven Wunder, M.D., dated 05/31/2018.

{¶ 29} 14. In an order mailed January 15, 2019, relator's request for reconsideration was denied.

{¶ 30} 15. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 31} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 34} Relator challenges the report of Dr. Wunder and asserts that it cannot constitute some evidence on which the commission could properly rely. In making this argument, relator first indicates that, inasmuch as Dr. Wunder noted that relator complained of some minor tenderness to palpation over the anterior chest wall, Dr. Wunder was required to provide a percentage of permanent impairment for that tenderness.

Secondly, relator argues that, inasmuch as Dr. Wunder indicated that he utilized Table 5-12, because he failed to perform any tests, his opinion must be excluded.

{¶ 35} In *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994), the Supreme Court of Ohio summarized the distinction between the ambiguous, equivocal and repudiated reports as follows:

> [E]quivocal medical opinions are not evidence. See, also, *State ex rel. Woodard v. Frigidaire Div., Gen. Motors Corp.* (1985), 18 Ohio St.3d 110 * * *. Such opinions are of no probative value. Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. [*State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72 (1983).] Thus, once clarified, such statements fall outside the boundaries of [*State ex rel. Jennings v. Indus. Comm.*, 1 Ohio St.3d 101 (1982)], and its progeny.
>
> Moreover, ambiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to *Jennings* or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence.

*Id.* at 657.

{¶ 36} A review of the three medical reports in evidence is necessary. When relator was examined by Dr. Wunder, he indicated that he had some right chest wall pain which tended to come and go. He noticed it with deep breaths and it depended on his exertional level. He told Dr. Wunder that he did not have any restrictions on his activities. On

examination, relator did complain of some minor tenderness to palpation over the anterior chest wall.

{¶ 37} When he was examined later by Dr. Ruch, relator told Dr. Ruch that he has a burning sensation along the right lung/chest wall, that he is frequently congested and has difficulty breathing. He reported that his energy levels were low and his activity is frequently interrupted due to an inability to catch his breath. He also indicated he had tenderness to palpation along the right third through fifth ribs, and Dr. Ruch concluded the impairment will continue to affect his ability with regard to activities of daily living.

{¶ 38} Similarly, when he was examined by Dr. Borillo, relator told him that he has pain and discomfort especially with deep breaths. He also reported tenderness especially over the right three through fifth ribs.

{¶ 39} If one simply looks at relator's subjective complaints, he gave both Drs. Ruch and Borillo the impression that his activities of daily living were impacted by the allowed conditions in his claim. When he was examined by Dr. Wunder, he specifically said that his activities of daily living were not interfered with and that he had no restrictions. Based on his subjective presentation to Dr. Wunder, it does not make Dr. Wunder's report equivocal for him to rely on the lack of subjective complaints made by relator when he assessed a zero percent impairment. Further, relator cites no authority for the assertion that some minor tenderness to palpation automatically equates with an actual impairment. From this point of view, relator's first argument to disqualify the report of Dr. Wunder fails.

{¶ 40} Relator also challenges Dr. Wunder's utilization of Table 5-12 of the American Medical Association Guides for permanent disability. Table 5-12 is entitled Impairment Classification for Respiratory Disorders, Using Pulmonary Function and Exercise Test Results. Relator asserts that, inasmuch as Dr. Wunder did not subject relator to any pulmonary function or exercise test, it was improper for Dr. Wunder to utilize Table 5-12 and this fact disqualifies Dr. Wunder's report from evidentiary consideration. At the outset, section 5.10 addresses permanent impairment due to respiratory disorders and indicates the following with regard to Table 5-12:

> Table 5-12 lists criteria for estimating the permanent impairment rating due to respirator disorders, using pulmonary function and exercise test results.
>
> * * *

> The classification system in Table 5-12 considers only pulmonary function measurements for an impairment rating. It is recognized that pulmonary impairment can occur that does not significant impact pulmonary function and exercise test results but that does impact the ability to perform activities of daily living, such as with bronchiectasis.
>
> In these limited cases, the physician may assign an impairment rating based on the extent and severity of pulmonary dysfunction and the <u>inability to perform activities of daily living</u>.

(Emphasis added.)

{¶ 41} Although Dr. Wunder did not conduct any pulmonary tests, no other doctor performed any pulmonary test either. However, based on the fact that relator informed Dr. Wunder that he had no restrictions, the magistrate finds that Dr. Wunder's reference to Table 5-12 is not fatal to his report especially given the preamble to that table.

{¶ 42} The reality is that relator essentially told Dr. Wunder that he was not having any problems with daily activities. It is undisputed that relator had returned to full duty at work. His only complaint to Dr. Wunder was some minor tenderness on palpation. Given the statements that he made to Dr. Wunder, the magistrate cannot say that Dr. Wunder's finding of no impairment is in any way equivocal given the nature of his examination and the lack of subjective complaints made by relator. Relator's argument that Dr. Wunder's report should be removed from evidentiary consideration is simply not supported by the record.

{¶ 43} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it relied on the report of Dr. Wunder and concluded that he did not have a percentage of impairment, and relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).