[Cite as *State ex rel. Strong v. Mark A. Adams, L.L.C.*, 2019-Ohio-4437.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Yvonne Strong, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-86 |
| | : | |
| Mark A. Adams, LLC et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on October 29, 2019

**On brief:** *The Bainbridge Firm, LLC, Casaundra L. Johnson*, and *Andrew J. Bainbridge*, for relator.

**On brief:** *Mark A. Adams, LLC*, and *Mark A. Adams*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} In this original action, relator, Yvonne Strong, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its ruling expressed in its staff hearing officer's ("SHO") December 28, 2017 Fee Controversy Letter ("fee controversy letter") resolving a dispute among relator and the two law firms that successively represented her in her application for her claim for workers' compensation benefits. Respondents are the commission, the law firm of Mark A. Adams, LLC ("Adams"), which initially represented relator in her claim, and JM Consolidated Industries, LLC, relator's former employer.

{¶ 2}    Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny the request for a writ of mandamus.

{¶ 3}    Relator has filed the following objection to the magistrate's decision:

> The Magistrate erred in finding that the Industrial Commission's allocation of attorney's fees properly meets the requirements of the doctrine of quantum meruit.

{¶ 4}    Relator claims that while she does not object to the use of the equitable doctrine of quantum meruit, she does object, however, to how the doctrine was applied in this case.  Relator claims the magistrate erred in finding the commission did not abuse its discretion in applying the doctrine of quantum meruit without addressing her arguments regarding the same or making findings regarding the legal sufficiency of the commission's decision.  In particular, relator argues the magistrate should have addressed her arguments that: (1) the fee controversy letter failed to provide an adequate basis for how the SHO determined the reasonable attorney fees for services was $13,021.10, (2) the fee controversy letter failed to address the factors outlined in Ohio Adm.Code 4121-3-24(A), and (3) the fee controversy letter failed to cite any evidence relied on as required by *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), and *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983).  Finally, relator objects to the magistrate's observation that she "appear[ed] satisfied."  (Appended Mag. Dec. at ¶ 49.)

{¶ 5}    In *Noll*, the Supreme Court of Ohio held:

> Once again we hold that in each of its orders granting or denying *benefits* to a claimant the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it. We reiterate that this court will not search the entire record for "some evidence" to support the commission's orders.

(Emphasis added.)  *Id.* at 206.

{¶ 6}    Relator argues that pursuant to *Noll* and *Mitchell* the commission was required to state the evidence it relied on or provide an adequate explanation for its determination regarding the fee dispute.  As noted above, *Noll* speaks to orders granting or

denying benefits.  Relator does not point us to any precedent which suggests that *Noll* applies to commission determinations regarding fee disputes.  Nevertheless, as explained below, the commission did state the evidence upon which it relied and provided sufficient explanation for its determination.

{¶ 7}  We begin by addressing relator's third argument.  The fee controversy letter cites to the "claim file and the testimony presented at the hearing" as the evidence upon which the SHO relied in making his determination.  This appears to be all the stipulated evidence.  Nevertheless, it is apparent from the results of the SHO's determination, that he found to be more credible and persuasive, the evidence presented by respondent Adams. Furthermore, by referencing the entire claim file, it is apparent the SHO considered the history and the complexity of relator's efforts to obtain benefits and the period during which Attorney Osgood was working with respondent Adams on relator's behalf and the period she was working with the Bainbridge firm on relator's behalf.

{¶ 8}  Next, we address relator's second argument.  Ohio Adm.Code 4121-3-24(A) outlines nine factors upon which attorney fees shall be based when the commission inquiries into an attorney fee controversy:

> (1) The time and labor required.
>
> (2) The novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly.
>
> (3) The amount involved and the results obtained.
>
> (4) The likelihood, if apparent to the claimant, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (5) The fee customarily charged in the locality for similar legal services.
>
> (6) The time limitations imposed by the claimant or by the circumstances.
>
> (7) The nature and length of the professional relationship with the claimant.
>
> (8) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(9) Whether the fee is fixed or contingent.

{¶ 9}   The fee controversy cites to "all of the legal expertise, work, preparation, evidence-gathering, planning, and support leading to the award to the Injured Worker of Permanent Total Disability (PTD) Compensation, within a month after she switched firms, was provided by Mark A. Adams, LLC.  The three-four week involvement of the Injured Worker's new law firm, Bainbridge Firm, LLC, was limited to the Bainbridge Firm's attendance at the PTD hearing by Lauren Osgood, Esq., a former employee of Mark A. Adams, LLC."  (Stip. of Evid. at 215.)  It is clear the SHO did take into consideration the criteria outlined in Ohio Adm.Code 4121-3-24(A), in particular, it is apparent the SHO expressly considered criterion (1), (2), (3), (7), and (8).  Relator claims the SHO did not address criteria (5)—the fees customarily charged in the locality for similar legal services.  However, even if the SHO did not expressly state that he considered criteria (5), the SHO had before it and apparently rejected relator's attorney, Attorney Osgood's, opinion that the fee request of $13,176 was high.  Relator also claims the SHO did not address criteria (8)—the experience, reputation, and ability of the lawyers or lawyers performing services.  As we have stated above, it is apparent the SHO expressly considered criteria (8) when he referenced "all of the legal expertise" leading to the award of permanent total disability.  Finally, relator claims the SHO did not address criteria (9)—whether the fee was fixed or contingent.  Again, even if the SHO did not expressly state that he considered criteria (9), the SHO was presented with evidence in the form of a contingent fee agreement providing for a fee of "30% of any accrued (back pay) benefits, without deduction for any existing overpayment as follows: * * * permanent and total disability."  The agreement also provided "[i]n the event that permanent total disability benefits are awarded on my behalf, [respondent] will be entitled to an additional lump sum payment of fees according to the Rules and Regulations of the Industrial Commission of Ohio." (Stip. of Evid. at 129.)  The agreement further addressed the circumstance where a claimant terminates representation before a contingent fee is paid and states that in such circumstance "[a]ttorneys shall be compensated at their usual hourly rates in effect at the date this agreement is signed

(currently $150 per hour) for work already performed in the claim(s)."[1]  (Stip. of Evid. at 129.)  The SHO was also presented with a fee invoice produced by respondent Adams showing the date, time, fee amount, and type of work that had been left uncompensated. Ultimately, the commission determined the fee amount based on quantum meruit.

{¶ 10} Regarding relator's first argument that the fee controversy letter does not explain how it arrived at the $13,021.10 amount, the invoice produced by respondent Adams reveals he requested $13,176.00 in attorney fees.  It further reveals relator expressed that this fee request was high.  Nevertheless, as noted above, the SHO explained the factors he considered in determining the appropriate amount.  The amount determined by the commission was supported by some evidence.

{¶ 11} Finally, relator takes issue with the magistrate's observation that the parties "appear satisfied."  The magistrate's entire statement was that the parties "appear satisfied that they understand the intended allocation sufficiently to disagree with or defend it." (Appended Mag. Dec. at ¶ 49.)  We agree with this observation as relator's complaint at paragraphs 25 and 30 clearly state relator is dissatisfied with the $13,021.00 awarded to respondent Adams.

{¶ 12} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled;*
*writ of mandamus denied.*

SADLER and NELSON, JJ., concur.

NELSON, J., concurring.

{¶ 13} I concur in the court's exegesis, and in the judgment denying the requested writ of mandamus.  I would not adopt the magistrate's decision in full, however, not only

---

[1] We note relator was permitted to supplement the record and included several letters requesting reconsideration. One such letter, dated December 11, 2017, indicated that a "Mr. _____" paid a stipulated contingency fee to respondent Adams. (May 4, 2018 Mot. to Supp. at 8.) However, the letter is redacted and there is no reference to relator, Strong, but rather to "Mr. _____." Furthermore, relator did not make any specific representations or arguments in her objections that relator, Strong, had paid the contingency fee.

because I am not convinced that this is an instance of form prevailing over substance as the magistrate suggests, *see* Appended Magistrate's Decision at ¶ 47, but because the commission's authority to inquire into attorney fee matters and resolve disputes in the context presented here seems to me sufficiently clear under the actual terms of the relevant statute and regulations without any need to consider additional latitude in the form of "deference" permitting the commission to expand its own powers informally, *see id.*

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Yvonne Strong, | : | |
| Relator, | : | |
| v. | : | No. 18AP-86 |
| Mark A. Adams, LLC et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## MAGISTRATE'S DECISION

### Rendered on July 17, 2019

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

*Mark A. Adams, LLC,* and *Mark A. Adams*, pro se.

*Dave Yost,* Attorney General, and *Amanda B. Brown*, for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 14} In this original action, relator, Yvonne Strong, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its ruling expressed in a "fee controversy letter" resolving a dispute among relator and the two law firms that successively represented her in her application for her claim for workers' compensation benefits. The respondents are the commission, the law firm of Mark A. Adams, LLC, which initially represented relator in her claim, and JM Consolidated Industries, LLC, relator's former employer.

Findings of Fact:

{¶ 15} 1.   In or about January 2013, relator was injured in the course of her employment with JM Consolidated Industries.

{¶ 16} 2.   Represented by attorney Lauren Osgood, an employee of the Mark A. Adams, LLC law firm, beginning in March 2013, relator pursued her claim for various forms of workers' compensation benefits.   Under claim number 13-802857, relator's claim was allowed for the following conditions:  DeQuervain's Tendonitis, right wrist; sprain of right wrist; sprain/strain of right thumb; right carpal tunnel syndrome; right ulnar nerve lesion; right elbow lateral epicondylitis; substantial aggravation of pre-existing right thumb CMC joint arthritis; and right radial neuropathy.

{¶ 17} 3.   On March 18, 2013, relator filed the Ohio Bureau of Workers' Compensation ("bureau") form R-2, Injured Worker Authorized Representative, naming Mark A. Adams, LLC, as her authorized representative to represent her before the bureau and the commission.

{¶ 18} 4.  Still represented by the Adams firm, relator filed on March 2, 2017 her application for permanent total disability ("PTD") compensation.

{¶ 19} 5.  The commission issued a Permanent Total Disability Statement of Facts on March 29, 2017.  The commission issued an Employability Assessment Report, which was sent to the Adams firm on or about July 14, 2017.

{¶ 20} 6.  In addition to an independent medical examination scheduled by the commission, relator obtained an employability assessment report by Robert Sproule, M.S., C.D.M.S., which she filed with the commission on July 14, 2017.

{¶ 21} 7. The commission issued a notice of hearing on July 15, 2017 setting relator's PTD application before a staff hearing officer ("SHO") on August 1, 2017.  This hearing was eventually cancelled due to ongoing settlement negotiations between the parties.

{¶ 22} 8.  On August 9, 2017, still represented by the Adams firm, relator again requested a hearing before an SHO.

{¶ 23} 9.  On September 5, 2017, attorney Osgood resigned her position with the Adams firm and began employment with the Bainbridge Firm, LLC.

{¶ 24} 10.  Relator wished to maintain her attorney-client relationship with attorney Osgood personally, and signed an R-2 form appointing the Bainbridge Firm, LLC as her new representative in her claim dated September 15, 2017, and filed on September 18, 2017.

{¶ 25} 11.  The commission issued a notice of hearing on September 22, 2017 setting relator's PTD application for hearing on October 11, 2017.

{¶ 26} 12.  On October 4, 2017, relator filed a form C-230, Authorization to Receive Workers' Compensation Benefits, authorizing the bureau to mail certain compensation related to relator or her application directly to the Bainbridge firm.  On the same day, relator filed a statement revoking prior C-230 forms in favor of the Adams firm.

{¶ 27} 13.  Relator, represented by the Bainbridge firm, appeared at her October 11, 2017 hearing.

{¶ 28} 14.  The SHO issued a final order on October 21, 2017 granting relator's application for PTD compensation beginning on January 1, 2017.

{¶ 29} 15.  On October 20, 2017, attorney Adams filed a C-86 motion requesting a fee dispute hearing before the commission pursuant to Ohio Adm.Code 4121-3-24(B).  The Bainbridge firm opposed the motion.

{¶ 30} 16.  The commission set the fee dispute hearing for December 7, 2017.

{¶ 31} 17.  On November 1, 2017, relator filed an application for lump sum payment of attorney's fees of $10,000 to the Bainbridge firm.

{¶ 32} 18.  The commission issued an ex parte order on November 14, 2017 granting the Bainbridge firm's application for payment of fees in the amount of $10,000 to Andrew Bainbridge, the principal of the Bainbridge firm.

{¶ 33} 19.  The fee dispute hearing took place on December 7, 2017 and on December 28, 2017, the SHO issued a fee controversy letter providing as follows:

> Pursuant to the provisions of R.C. 4123.06 and Ohio Adm.Code 4121-3-24, a fee controversy hearing was conducted on 12/07/2017. The hearing was attended by Mark A. Adams, Esq. Ms. Yvonne Strong, Lauren N. Osgood, Esq., and a Court Reporter.
>
> Based upon a review of the claim file and the testimony presented at the hearing, it is the opinion of the Staff Hearing Officer that valuable legal services were rendered by the law firm on the Injured Worker's behalf and further that $13,021.10 represents a reasonable legal fee for those services.

> This amount is based on the fact that all of the legal expertise, work, preparation, * * * evidence-gathering, planning, and support leading to the award to the Injured Worker of Permanent Total Disability (PTD) Compensation, within a month after she switched firms, was provided by Mark A. Adams, LLC. The three-four week involvement of the Injured Worker's new law firm, Bainbridge Firm, LLC, was limited to the Bainbridge Firm's attendance at the PTD hearing by Lauren Osgood, Esq., a former employee of Mark A. Adams, LLC. The Staff Hearing Officer finds that the couple of thousand dollars of remaining fees generated by the Injured Worker's Permanent Total Disability Award fairly and reasonably compensate Bainbridge Firm, LLC for its attendance at the PTD hearing and continued representation of the Injured Worker after that PTD determination, based upon circumstances as they exist at this time.

{¶ 34} 20.  The commission denied continuing jurisdiction by fee controversy letter issued February 3, 2018.

{¶ 35} 21.  Relator filed her complaint in mandamus with this court on February 8, 2018.

{¶ 36} 22. The Adams firm filed its answer on February 12, 2018.

{¶ 37} 23.  The commission filed its answer on March 8, 2018.

{¶ 38} 24.  Respondent JM Consolidated Industries, LLC has not appeared in this action.

Discussion and Conclusions of Law:

{¶ 39}  Ohio Adm.Code 4121-3-24 provides that "[t]he commission may inquire into the amounts of fees charged by attorneys, agents or representatives of the parties for services and matters before the commission and shall protect parties against unfair fees." Ohio Adm.Code 4121-3-24(B) provides as follows:

> When a controversy exists between a party and his representative concerning fees for services rendered in industrial claims, either the party or the representative may make a written request to the commission to resolve the dispute. * * * The commission shall fix the amount of a reasonable fee, if any fee be due the representative, and the decision of the commission shall be binding upon the parties to the dispute.

{¶ 40} Ohio Adm.Code 4121-3-24(E) defines the term "controversy" as used in these sections: "A 'controversy,' as used in this rule, means a dispute between a claimant and his attorney."

{¶ 41} The above administrative code language is promulgated pursuant to R.C. 4123.06, which provides as follows: "[t]he Industrial Commission shall adopt rules concerning the payment of attorney's fees and shall protect parties against unfair fees." Under R.C. 4123.06(A), the commission is directed to "[a]pprove, disprove, or modify applications for lump sum payment for attorney's fees."

{¶ 42} Relator in this case seeks a writ of mandamus from this court ordering the commission to vacate its order expressed in the fee controversy letter of December 28, 2017. Relator asserts that relator's former counsel, the Adams firm, did not have standing to raise a fee dispute issue under the above statutory and regulatory language. In the alternative, relator seeks a writ compelling the commission to vacate the fee controversy letter on the basis the commission improperly applied the equitable doctrine of quantum meruit to allocate fees payable by relator between the two firms that successively provided representation through the course of relator's claim before the commission.

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight of evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 44} Because the factual findings above are largely undisputed, two issues are before the magistrate. The first is whether the commission had jurisdiction to address a fee dispute that lies essentially between former and current counsel under circumstances in

which the claimant has virtually no stake in the outcome, the overall fee charged to the claimant being unaffected by the proportions in which it is divided.  The second is whether the commission abused its discretion when it applied a quantum meruit evaluation to allocate the fees, determining that relator's initial counsel, the Adams firm, had done by far the bulk of the work in pursuit of her PTD application, and should receive the preponderance of the fees.

{¶ 45} With respect to the commission's authority to hear and adjudicate this fee dispute, the magistrate concludes that it could legally do so.

{¶ 46} Ohio Adm.Code 4121-3-24(E) refers to controversies consisting of "a dispute between a claimant and his attorney."  Relator first proposes that this limits the commission's jurisdiction to fee disputes between claimants and their *current* legal representatives.  The magistrate finds no rational support for the proposition that the commission was deprived of authority simply because the Bainbridge firm filed its notice of representation (R-2) chronologically later than that filed by the Adams firm, nor is there room for such a distinction in the regulatory language.

{¶ 47} There remains the finer question, however, of whether the current case represents an actual dispute between a claimant and counsel, or merely a dispute between two successive counsel with the claimant essentially having no interest in the outcome. There is precedent in Ohio for the proposition that such a dispute can be resolved in a contract action in a court of general jurisdiction.  *Sonkin & Melena Co., L.P.A. v. Zaransky,* 83 Ohio App.3d 169 (8th Dist.1992) (Addressing an appeal from the Cuyahoga County Court of Common Pleas, where former counsel had sued successor counsel).  In contrast, the Second District Court of Appeals has held that "an attorney is required to submit to the Ohio Industrial Commission any controversy concerning the attorney's fee for legal services rendered in connection with a claim for workers' compensation, and the attorney may not assert a claim for the fee without first obtaining a determination of the amount thereof by the Industrial Commission."  *Hochman & Roach Co. v. Weaver,* 2nd Dist. No. 99-CA-41 (Feb. 25, 2000).

{¶ 48} Giving due deference to the commission's substantial expertise in interpreting its own regulations, *State ex rel. McLean v. Indus. Comm.,* 25 Ohio St.3d 90 (1986), the magistrate concludes that the commission's interpretation of its authority to

resolve a fee dispute involving a former representative is reasonable. Although the principal and practical dispute in this case centers on the division of fees between two successive legal representatives, and the outcome is without pecuniary impact on relator, all fee-related filings by the Bainbridge firm, by virtue of the structure of the standard forms involved, were brought in the name of relator rather than the firm. Technically, therefore, it can be noted that it is relator who seeks disbursement of the allowed fees in their entirety to the Bainbridge firm, and relator who contests a partial disbursement to the Adams firm. As is often the case in the administrative arena, major items of form must prevail over minor items of substance. The orderly administration of fees, which is comprehensively addressed in the workers' compensation statutory and regulatory scheme, may be taken to extend to disputes such as the present one. The magistrate therefore concludes the commission had authority to issue the December 28, 2017 fee controversy letter.

{¶ 49} With respect to the allocation of fees, the question is whether the commission abused its discretion in applying the quantum meruit method and in assessing the measure of legal services rendered to relator by each firm. This court has approved application of the equitable doctrine of quantum meruit in considering attorney fees in commission cases. *State ex rel. Bashein & Bashein Co., LPA v. Indus. Comm.*, 10th Dist. No. 10AP-642, 2011-Ohio-5168. This reflects Ohio's long-standing application of the doctrine in attorney fee disputes generally. *Columbus Bar Assn. v. Farmer*, 111 Ohio St.3d 137, 2006-Ohio-5342, ¶ 32; *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 573 (1994). In *Farmer*, the Supreme Court summarized the rule as follows:

> Upon discharge or withdrawal, a lawyer may also recover from a client the reasonable value of the services rendered under the doctrine of quantum meruit, which literally entitles the lawyer to "as much as [is] deserved." To this end, DR 2-106(B) lists factors for determining the value of services rendered, including the time, labor, and skill required by the representation and the rate customarily charged in the locality for such services. But whether the lawyer claims client money already in his or her possession or pursues payment through legal action, the lawyer still has the responsibility to accurately justify the reasonable value of charged legal fees to establish entitlement.

(Citations omitted, alterations preserved.) *Farmer* at ¶ 32.

{¶ 50} The magistrate does note that the fee controversy letter is not entirely clear as to who is entitled to what share of the allowed fee; the parties, however, appear satisfied they understand the intended allocation sufficiently to disagree with or defend it. The magistrate concludes this is not a disputed point of fact. Nor can the magistrate find an abuse of discretion on the part of the commission in allocating the major share of fees to the Adams firm, based upon the timeline presented before the SHO, and the effort expended by each firm on behalf of the client.

{¶ 51} In summary, for the above reasons, it is the magistrate's decision that this court deny the requested writ of mandamus.


/S/ MAGISTRATE
MARTIN L. DAVIS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).