[Cite as *State ex rel. Foulkrod v. Indus. Comm.*, 2024-Ohio-1222.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Lynn Foulkrod, | : | |
| Relator, | : | |
| | : | No. 23AP-52 |
| v. | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on March 29, 2024

**On brief:** *Nager, Romaine & Schneiberg, LPA*, and *Catherine B. Lietzke*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Natalie K. Tackkett*, for respondent Industrial Commission of Ohio.

**On brief:** *Shapiro, Marnecheck & Palnick Co., LPA*, and *Matthew A. Palnik*, for respondent Shapiro, Marnecheck & Palnik Co., LPA.

IN MANDAMUS

BOGGS, J.

{¶ 1}   Relator, Lynn Foulkrod, has filed this original action requesting a writ of mandamus against respondents, Industrial Commission of Ohio (the "commission") and Shapiro, Marnecheck & Palnik Co., LPA ("SMP"), relator's former legal counsel.  Relator seeks a writ of mandamus deciding the fee controversy between herself and SMP in this matter or, alternatively, remanding this matter to the commission for determination.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.  The magistrate held oral argument, considered the action on the merits, and issued a decision, including findings of fact and conclusions of law, which is appended hereto.

{¶ 3}    Relator's mandamus claim arises out of the commission's resolution of a fee controversy between relator and SMP, which represented relator with respect to her workers' compensation claim for a workplace injury she sustained in March 2004. In March 2022, after relator had replaced SMP with new counsel, SMP filed with the commission, pursuant to Ohio Adm.Code 4121-3-24, a motion requesting a hearing regarding an attorney fee dispute related to work it had performed with respect to relator's claim. In September 2022, a commission staff hearing officer issued a fee controversy letter in which the hearing officer found that $22,658.95 represented a reasonable legal fee for the services SMP had performed on relator's behalf. The commission denied relator's request for reconsideration, after which relator filed this original action for a writ of mandamus.

{¶ 4}    The magistrate concluded that the commission abused its discretion in resolving the fee controversy in this matter because SMP did not present evidence of payments it received for services rendered on behalf of relator, as required by Ohio Adm.Code 4121-3-24(B). The magistrate therefore determined that relator is entitled to the requested writ.

{¶ 5}    Despite the commission obtaining an extension of time to file objections to the magistrate's decision, no objections have been filed. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

{¶ 6}    Upon review, we find no error in the magistrate's findings of fact or conclusions of law. We therefore adopt the magistrate's decision, including the magistrate's findings of fact and the conclusions of law, as our own. Accordingly, we grant relator's request for a writ of mandamus and order the commission to vacate its September 15, 2022 fee controversy letter and conduct further proceedings as may be required, in accordance with the law and this decision.

*Writ of mandamus granted.*

MENTEL, P.J. and JAMISON, J., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Lynn Foulkrod, | : | |
| Relator, | : | |
| v. | : | No.  23AP-52 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 1, 2023

*Nager*, *Romaine & Schneiberg Co.*, *L.P.A.*, *Catherine B. Lietzke*, for relator.

*Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

*Shapiro*, *Marnecheck & Palnick Co.*, *LPA*, and *Matthew A. Palnik*, for respondent Shapiro Marnecheck & Palnick Co., LPA.

IN MANDAMUS

{¶ 7}   Relator, Lynn Foulkrod, has filed this original action in mandamus against respondent, Industrial Commission of Ohio ("commission"), and respondent Shapiro, Marnecheck & Palnik ("SMP"), former counsel for relator. Relator seeks a writ of mandamus deciding the fee controversy at issue in this matter or, in the alternative, remanding this matter to the commission for determination.

## I. Findings of Fact

{¶ 8}   1. Relator sustained a work-related injury on March 3, 2004 while working for Novak, Robenalt & Deliberto as a litigation paralegal when the opening of a filing cabinet

drawer caused relator to trip and become trapped between two filing cabinets. Relator's workers' compensation claim was ultimately allowed for sprain shoulder/arm, bilateral shoulder; cervical sprain; c6-7 disc protrusion; major depression; chronic pain disorder; adjacent segment spondylosis of c5-6 and c7-t1. Relator received medical care, diagnostic services, and treatment over the course of the claim including multiple surgeries, aqua therapy, and pain medication.

{¶ 9}   2. In an R-2 injured worker authorized representative form dated April 6, 2015, relator authorized Philip A. Marnecheck of SMP to represent her in her workers' compensation claim before the Bureau of Workers Compensation ("bureau") and commission. Marnecheck was relator's third legal representative over the course of the claim. After securing Marnecheck's representation, relator filed a number of applications and motions related to temporary total disability ("TTD") and permanent partial disability ("PPD"). As the resolutions of some of these applications and motions occurred in an overlapping fashion, the following findings of fact are grouped chronologically by motion or application, as opposed to purely chronologically.

{¶ 10}   3. On April 14, 2018, a commission staff hearing officer ("SHO") granted relator's application for an increase in percentage of PPD. The SHO found relator's PPD had increased to 48 percent, an increase of 18 percent from the prior award. The SHO granted relator an additional award of compensation for a period of 36 weeks.

{¶ 11}   4. On June 18, 2019, a commission district hearing officer ("DHO") granted another application for an increase in percentage of PPD filed by relator. The DHO found relator's PPD had increased to 53 percent, an increase of 5 percent from the prior award. The DHO granted relator an additional award of compensation for a period of 10 weeks.

{¶ 12}   5. On October 2, 2019, a commission DHO denied relator's July 26, 2019 motion for TTD compensation. A commission SHO affirmed the DHO's order on November 8, 2019. The commission refused relator's appeal from the SHO order on November 27, 2019.

{¶ 13}   6. On February 15, 2020, a commission DHO granted relator's December 18, 2019 motion for TTD compensation and awarded compensation from December 16, 2019 through February 13, 2020 and to continue upon appropriate proof. On March 26, 2020, a commission SHO vacated the DHO's February 15, 2020 order and denied relator's motion

for TTD compensation. A bureau overpayment worksheet dated March 26, 2020 reflected three payments of TTD compensation to relator that were marked as "cashed." (Stip. at 633.)[1] The worksheet indicated that the TTD payments to relator were overpayments pursuant to the SHO order denying TTD compensation and provided that the total amount of the overpayment was due and owing to the bureau. On April 14, 2020, the commission refused relator's appeal from the March 26, 2020 SHO order.

{¶ 14} 7. On July 28, 2020, a commission DHO dismissed relator's May 29, 2020 motion for an additional allowance and TTD compensation upon the request of relator's counsel. On November 21, 2020, a commission DHO denied another motion for an additional allowance and TTD compensation filed by relator on September 21, 2020. On February 10, 2021, a commission SHO modified the November 21, 2020 DHO order and denied relator's motion for an additional allowance and TTD compensation. On March 2, 2021, the commission refused relator's appeal from the February 10, 2021 SHO order.

{¶ 15} 8. On April 17, 2021, a commission DHO denied relator's March 17, 2021 motion for TTD compensation. On May 28, 2021, a commission SHO denied relator's March 17, 2021 motion for TTD compensation on appeal from the April 17, 2021 DHO order. On June 16, 2021, the commission refused relator's appeal from the May 28, 2021 SHO order.

{¶ 16} 9. On May 8, 2021, a commission DHO denied relator's February 22, 2021 motion for TTD compensation. On August 14, 2021, a commission SHO vacated the May 8, 2021 DHO order and denied relator's motion for TTD compensation. On September 2, 2021, the commission refused relator's appeal from the August 14, 2021 SHO order.

{¶ 17} 10. On August 3, 2021, a commission DHO granted relator's application for an increase in percentage of PPD. The DHO found relator's PPD had increased to 57 percent, an increase of 4 percent from the prior award. The DHO granted relator an additional award of compensation for a period of 8 weeks.

---

[1] A stipulation of evidence in this mandamus action was filed on April 21, 2023. A number of pages in this record were either missing or incomplete. A supplemental certified record was filed October 18, 2023. For clarity, references to the stipulated record shall be indicated by "Stip."; references to the supplemental certified record shall be indicated by "SCR" followed by the page number in that record.

{¶ 18} 11. In an R-2 injured worker authorized representative form dated September 13, 2021, relator authorized Nager, Romaine & Schneiberg Co., L.P.A. ("NRS"), to represent her in her workers' compensation claim before the bureau and commission.

{¶ 19} 12. SMP filed a C-86 motion dated March 16, 2022 requesting that the commission "schedule an emergency hearing regarding a dispute in attorney fees per [Ohio Adm.Code] 4121-3-24 * * * related to work the undersigned has done on this file prior to claimant terminating said representation." (Stip. at 1027.) Attached to the C-86 motion was the affidavit of Philip A. Marnecheck. Marnecheck averred that relator retained him as counsel on March 31, 2015. Marnecheck stated that he filed an appeal on relator's behalf pursuant to R.C. 4123.512 on March 18, 2021. Relator terminated representation with Marnecheck on September 8, 2021. Marnecheck stated that "I was notified that Nager, Romaine & Schneiberg Co., L.P.A. has been retained by [relator] to overtake her workers' compensation claim and the Court appeal filed by my office." (Stip. at 1028.) According to Marnecheck, his "office has attempted to resolve this matter with [relator's] new attorneys but have not received any response." (Stip. at 1028.)

{¶ 20} Also attached to the C-86 motion was a document captioned "contract for legal representation" that was purportedly signed by relator (hereinafter "legal representation agreement"). (Emphasis removed.) (Stip. at 1029.) The legal representation agreement provided as follows:

> In consideration for legal services to be rendered, I hereby agree to pay my attorney as follows:
>
> II. Attorney shall be entitled to one-third (1/3) of any disfigurement, "schedule B", or permanent partial award and any subsequent increases thereof, whether paid in a lump sum or in a bi-weekly manner.
>
> III. Attorney shall be entitled to one-third (1/3) of any amount of temporary total disability compensation accrued and received in connection with an administrative order. Attorney is entitled to forty percent (40%) of any amount of temporary total disability compensation accrued and received resulting from any claim or condition successfully appealed in court.
>
> IV. Attorney shall be entitled to one-third (1/3) of any wage loss compensation received.
>
> V. Attorney shall be entitled to one-third (1/3) of any lump sum settlement award at the administrative level and forty

> percent (40%) of any award and/or settlement pursuant to court appeal or writ of mandamus.
>
> * * *
>
> X. Claimant further agrees that it will be claimants' responsibility to pay or reimburse attorney for any expenses such as medical report(s), hospital records, doctor(s) fees, court costs, expert opinion fees, and the like, to be paid out of any award claimant may receive in connection with claimant's aforementioned work-related injury. Claimant is responsible for reimbursing attorney for all expenses, even if no award is made in this claim.

(Stip. at 1029.)

{¶ 21} 13. On April 13, 2022, relator entered into a settlement agreement that resolved relator's workers' compensation claim.

{¶ 22} 14. On April 20, 2022, a commission SHO mailed a fee controversy letter informing the parties that "[t]his matter is reset at the request of the previous attorney of record for the reason that additional time is requested to provide more detailed information as to the services provided from the date that the Injured Worker entered into a contract for legal services on 03/31/2015 and the offer of settlement in the Court action prior to new counsel's representation on 09/13/2021." (Stip. at 1036.) The SHO noted that all parties did not agree to the continuance and ordered the matter to be set after 60 days.

{¶ 23} 15. In a letter dated May 4, 2022, counsel for SMP requested that NRS "submit to the claim file a copy of their fee agreement with claimant, an itemization of their time and any co-counsel's time, as well as copies of the settlement documentation and/or the settlement amount if the settlement documents do not exist yet." (Stip. at 1040.)

{¶ 24} 16. In a letter dated May 17, 2022, counsel for SMP requested that the commission issue a subpoena to NRS for (1) the fee agreement with relator and (2) the settlement agreement, or, in the event the settlement paperwork is not yet prepared, the settlement amount. (Stip. at 1045.)

{¶ 25} 17. In a compliance letter mailed June 30, 2022, a commission regional manager made the following findings in pertinent part:

> 1. Previous counsel acknowledges that Ohio Adm.Code 4121-3-34(B) requires the submission of "a copy of the written fee agreement and an itemized statement showing all services rendered and expenses incurred in regard to the matter in controversy and also any and all payments received". The

written fee agreement has been filed, and counsel is in the
process of preparing the itemized statement. The anticipated
date for completion is 30 days from today's conference.

(Stip. at 1072; SCR at 32.) Furthermore, the letter provided that "[i]n accordance with previous counsel's anticipated completion date of the itemized statement referenced in paragraph (1), the issue of the attorney fee dispute shall be set for hearing before a Staff Hearing Officer on the merits after 08/01/2022." (SCR at 32.)

{¶ 26} 18. In a subpoena letter mailed July 15, 2022, a commission hearing administrator denied SMP's subpoena request for failure to show good cause because "[n]either the fee agreement with present counsel or the settlement amount obtained by present counsel are relevant to what additional fees are due previous counsel for work performed during their tenure." (Stip. at 1074.)

{¶ 27} 19. A hearing on the fee controversy was held before a commission SHO on August 30, 2022.

{¶ 28} 20. A document filed with the commission on August 30, 2022 reflected a payment of $258.95 related to the filing of a complaint and workers' compensation administrative appeal. Relator was listed as the plaintiff and Matthew A. Palnik was listed as the filing attorney. Another document filed with the commission on August 30, 2022 was captioned "Lynn Foulkrod BWC Claim * * * Itemization of Work." (Stip. at 1078.) The document reflected a total time spent of 196 hours and 20 minutes for the period beginning March 31, 2015 through September 9, 2021.

{¶ 29} 21. In a fee controversy letter mailed September 15, 2022, a commission SHO stated that "[b]ased upon a review of the claim file and the testimony presented at the hearing, it is the opinion of the [SHO] that valuable legal services were rendered by the law firm of Philip Marnecheck on the [relator's] behalf and further that $22,658.95 represents a reasonable legal fee for those services." (Stip. at 1094; SCR at 35.) The SHO stated that this calculation was "based on 112 hours of work multiplied by $200.00 per hour, pertaining to claim settlement conferences with [relator] and work performed on various claim related issues for treatment, temporary total compensation and the requested additional allowance of C3-4 disc herniation pending in the Court of Common Pleas, at the time of the discharge of services per the itemization of services provided" in addition to the

"filing fee for the court complaint." (Stip. at 1094; SCR at 35.) The SHO cited to the legal representation agreement between relator and SMP.

> The SHO made the following findings:

> The Staff Hearing Officer finds that [relator's] previous counsel has submitted in conjunction with this fee dispute, a fully executed copy of the contract for legal representation, affidavit of Philip Marnecheck and itemization of services performed on behalf of Injured Worker from 3/31/2015 through the date of discharge of 9/8/2021 for 196.20 hours which has been reviewed by the Staff Hearing Officer in assessing an equitable determination of hours of work performed multiplied by the agreed hourly rate under the terms of the aforementioned fee agreement.

> The Staff Hearing Officer finds that the Injured Worker's previous counsel represented counsel at various proceedings before the Industrial Commission, and has submitted a detailed accounting of work performed including obtaining medical documentation, form and pleading preparation, legal research, hearing preparation, client contact, and potential claim settlement review on multiple occasions contrary to the testimony of the Injured Worker at hearing.

> The Staff Hearing Officer finds per the evidence submitted and testimony by previous counsel at hearing, that settlement was reviewed with Injured Worker and settlement negotiations were initiated prior to their discharge of counsel.

> Injured Worker's new counsel fully settled the claim with the Ohio Attorney General at mediation, shortly after being retained.

(SCR at 35-36.) The SHO found in conclusion that "based upon the services rendered and [relator's] obligation under the fully executed and acknowledged contract for services, that the above-stated fee is deemed reasonably appropriate for the number of hours and amount of services provided prior to the discharge of the attorney." (SCR at 36.)

{¶ 30} 22. Relator filed a memorandum in support of reconsideration for the fee controversy letter dated September 30, 2022. Attached to the memorandum was the affidavit of Austin J. Enger, associate attorney with NRS. Enger averred that the statements in the affidavit "reflect the events that occurred at a fee dispute hearing on August 30, 2022" before the SHO. (Stip. at 1110.) According to Enger, relator stated at the hearing that "she would not answer any questions regarding a settlement or fee contract with [NRS]." (Stip. at 1110.) Enger also stated that "we would not disclose any information regarding a

settlement or fee agreement" between relator and NRS. (Stip. at 1110.) According to Enger, the SHO "responded that the Settlement is public record and stated that the B.W.C. Note dated 04/15/2022 listed the total settlement amount" and provided such amount. (Stip. at 1110.) Additionally, Enger averred that "[d]uring the hearing, Mr. Palnik, for the first time, introduced a spreadsheet containing the itemized work his office performed." (Stip. at 1110.) Enger stated that he requested a continuance "on the basis that this was new evidence that was not previously filed and was not provided to [NRS]," but the SHO denied the request. (Stip. at 1110-11.)

{¶ 31} 23. In a fee controversy letter mailed October 29, 2022, the commission denied relator's September 30, 2022 request for reconsideration because the request failed to meet the criteria for the commission to exercise continuing jurisdiction under R.C. 4123.52.

{¶ 32} 24. Relator filed her mandamus complaint in this case on January 24, 2023. Relator filed an amended complaint on January 31, 2023. Oral argument was held in this matter on October 18, 2023.

## II. Discussion and Conclusions of Law

{¶ 33} Relator seeks a writ of mandamus determining the fee controversy at issue in this matter.

### A. Requirements for Mandamus

{¶ 34} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 35} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).

Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. However, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George* at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

## B. Applicable Law

{¶ 36} The commission possesses statutory authority to regulate attorney's fees in Ohio's workers' compensation system. Pursuant to R.C. 4123.06, the commission is required to "adopt rules concerning the payment of attorney's fees," "protect parties against unfair fees," and "fix the amount of fees in the event of a controversy in respect thereto." Under this authority, Ohio Adm.Code 4121-3-24 was promulgated. Ohio Adm.Code 4121-3-24(A) provides that "[a]ttorney fees shall be based upon" the following nine factors:

> (1) The time and labor required.
>
> (2) The novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly.
>
> (3) The amount involved and the results obtained.
>
> (4) The likelihood, if apparent to the claimant, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (5) The fee customarily charged in the locality for similar legal services.
>
> (6) The time limitations imposed by the claimant or by the circumstances.
>
> (7) The nature and length of the professional relationship with the claimant.
>
> (8) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (9) Whether the fee is fixed or contingent.

Ohio Adm.Code 4121-3-24(A). The remaining provisions of Ohio Adm.Code 4121-3-24 relate to fee controversies. A "controversy" for purposes of this administrative code section means "a dispute between a claimant and [their] attorney." Ohio Adm.Code 4121-3-24(E). The commission's resolution of a fee controversy is governed by Ohio Adm.Code 4121-3-24(B), which provides:

> When a controversy exists between a party and his representative concerning fees for services rendered in industrial claims, either the party or the representative may make a written request to the commission to resolve the dispute. The commission shall set the matter for special hearing and inquire into the merits of the controversy. The commission shall fix the amount of a reasonable fee, if any fee be due the representative, and the decision of the commission shall be binding upon the parties to the dispute.
>
> In such controversies, the commission shall not assume jurisdiction unless the written request is filed within one year of the payment of the amount claimed or request therefore.
>
> The representative shall file a copy of the written fee agreement and an itemized statement showing all services rendered and expenses incurred in regard to the matter in controversy and also any and all payments received.

Ohio Adm.Code 4121-3-24(B). The commission is required to inquire as to whether a fee agreement is a contingency fee agreement and, if so, inquire "as to whether the contingency that is the basis for the matter in controversy has occurred." Ohio Adm.Code 4121-3-24(C).

## C. Application

{¶ 37} Relator asserts the commission abused its discretion in resolving the fee controversy at issue in this matter. First, relator argues that the commission did not have jurisdiction to hear the fee dispute between two law firms or attorneys. Ohio Adm.Code 4121-3-24(E) makes clear that a "controversy" under that section is limited to "a dispute between a claimant and [their] attorney." This court has stated that "the General Assembly has only granted the commission jurisdiction to adjudicate fee disputes between the attorney and the client." *State ex rel. Baker v. Indus. Comm.*, 10th Dist. No. 12AP-114, 2013-Ohio-5697, ¶ 5. "The commission has no jurisdiction to adjudicate a fee dispute between the law firm and the bureau." *Id.*

{¶ 38} SMP's March 16, 2022 C-86 motion invoked the commission's jurisdiction to resolve "a dispute in attorney fees per [Ohio Adm.Code] 4121-3-24." SMP stated that the dispute was "related to work the undersigned has done on this file prior to claimant terminating said representation." (Stip. at 1027.) There is no mention of relator's current counsel in the motion. Furthermore, the March 16, 2022 fee controversy motion was filed prior to the settlement of relator's claim on April 13, 2022. Thus, while relator is correct

that the commission does not possess jurisdiction to resolve a fee controversy between a claimant's former attorney and a subsequently-retained attorney, such jurisdictional issue is not present in this matter. The commission possessed jurisdiction to resolve the fee controversy between relator and her former legal representative.[2] *Baker* at ¶ 5.

{¶ 39} Next, relator raises two arguments related to the SHO's disclosure of the settlement agreement and purported use of the settlement amount contained therein. Relator argues the SHO violated the rules of confidentiality by obtaining the settlement amount from the bureau. Relator also argues that the SHO committed an abuse of discretion by using the settlement amount as the basis for the attorney fee awarded to SMP. Relator's arguments are unavailing. The SHO stated in the September 15, 2022 fee controversy letter that the amount of the legal fee awarded was "based on 112 hours of work multiplied by $200.00 per hour, pertaining to claim settlement conferences with [relator] and work performed on various claim related issues for treatment, temporary total compensation and the requested additional allowance of C3-4 disc herniation pending in the Court of Common Pleas, at the time of the discharge of services per the itemization of services provided" in addition to the "filing fee for the court complaint." (Stip. at 1094; SCR at 35.) The SHO did not reference the settlement agreement in making this calculation, but instead stated the calculation was based on SMP's itemized list of services provided and the record of the filing fee submitted on August 30, 2022. Because the SHO's determination of the amount of the fee was not based on the settlement amount, relator cannot demonstrate a clear legal right to the requested relief related to the SHO's obtaining or disclosure of the settlement amount.

{¶ 40} Finally, relator argues the evidence submitted by SMP in the fee controversy proceedings was insufficient to support the award and in violation of the requirements under Ohio Adm.Code 4121-3-24. Specifically, relator argues that SMP failed to comply with the requirement to provide evidence of any and all payments received under Ohio Adm.Code 4121-3-24(B). Relator also raised this argument before the commission in her memorandum in support of reconsideration. (Stip. at 1105-06.) However, neither the

---

[2] The magistrate notes that at oral argument on October 18, 2023, relator's counsel stated that it was clear from SMP's March 16, 2022 C-86 motion that such motion was made against the injured worker. Relator's counsel conceded that the commission did have jurisdiction over this matter.

commission nor SMP respond in their briefs in this matter to relator's argument that SMP failed to provide all of the evidence required by Ohio Adm.Code 4121-3-24(B).

**{¶ 41}** Here, the record fails to reflect any evidence submitted by SMP demonstrating payments received by SMP from the representation of relator. Nor does SMP's itemized list of services rendered indicate that such list only included those items for which no prior payment had been made. *Compare State ex rel. Strong v. Mark A. Adams, LLC*, 10th Dist. No. 18AP-86, 2019-Ohio-4437, ¶ 9 (noting that the "fee invoice produced by [the] respondent [law firm] * * * show[ed] the date, time, fee amount, and *type of work that had been left uncompensated*" in finding that some evidence supported the commission's determination of the appropriate amount of fees based on quantum meruit (Emphasis added.)). SMP's failure to provide such evidence contravenes Ohio Adm.Code 4121-3-24(B), which provides that "[t]he representative shall file a copy of the written fee agreement and an itemized statement showing all services rendered and expenses incurred in regard to the matter in controversy and also *any and all payments received*. (Emphasis added.)

**{¶ 42}** The purpose of the administrative code's requirement to provide evidence of prior payments when considering the appropriate fee on the equitable basis of quantum meruit is clear.[3] Determining a reasonable attorney's fee on the basis of the value of services rendered without accounting for prior payments on such services might result in the previously-represented party paying for the same services more than once. *See Sonkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 178 (8th Dist.1992) (stating that where "complaint was decided under quantum meruit * * * the attorneys cannot recover more than the value of the services rendered" and that "[t]here is, therefore, no other legal theory left open under which the attorneys can recover for the same services twice from the clients. A recovery under quantum meruit is a complete bar to any subsequent claim for the same services"). Thus, making an attorney fee determination in the absence of evidence of

---

[3] Quantum meruit has been defined as "[a] claim or right of action for the reasonable value of services rendered." *Black's Law Dictionary* 1437 (10th Ed.2014.) *See Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 72 (1989) (holding that "where an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered prior to the discharge on the basis of quantum meruit"); *Pohmer v. JPMorgan Chase Bank, N.A.*, 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 20 ("A claim for quantum meruit shares the same essential elements as a claim for unjust enrichment, and both doctrines are equitable doctrines.").

prior payments received defies the plain language of the administrative code and the principles of equity on which the calculation of the attorney fee is based.

{¶ 43} SMP's failure to provide evidence demonstrating any and all payments received is especially problematic because the record in the claim raises at least a question as to payments that may have already been made to SMP. SMP's itemized list of services provided included time allocated to PPD requests. The record reflects that during the period of SMP's representation of relator, the commission granted increases in relator's percentage of PPD, resulting in the awarding of additional compensation. Under the terms of the legal representation agreement between relator and SMP, SMP was "entitled to one-third (1/3) of any * * * permanent partial award and any subsequent increases thereof, whether paid in a lump sum or in a bi-weekly manner." (Stip. at 1029.) Although the SHO does not specifically mention PPD in the summary of the work that provided the basis for calculation of the legal fee, it is not possible to discern the individual itemized services that were considered in determining the amount of the award from the SHO's summary. In addition to more specific bases, the SHO stated that the amount of the legal fee was based on "work performed on various claim related issues for treatment." (Stip. at 1094; SCR at 35.)

{¶ 44} Additionally, SMP's itemized list of services provided included time allocated to a motion for TTD on or after December 17, 2019. Under the February 15, 2020 DHO order, relator's December 18, 2019 motion for TTD was granted and relator was awarded TTD compensation. Although this DHO order was later reversed by the March 26, 2020 SHO order, the March 26, 2020 bureau overpayment worksheet indicated that three payments of TTD to relator had already been cashed. Under the terms of the legal representation agreement between relator and SMP, SMP was "entitled to one-third (1/3) of any amount of temporary total disability compensation accrued and received in connection with an administrative order." (Stip. at 1029.) The SHO stated that work pertaining to TTD compensation was part of the calculation of the legal fee.

{¶ 45} Furthermore, in the July 15, 2022 subpoena letter, the commission hearing administrator denied SMP's subpoena request and stated that "[n]either the fee agreement with present counsel or the settlement amount obtained by present counsel are relevant to what *additional fees* are due previous counsel for work performed during their tenure."

(Emphasis added.) (Stip. at 1074.) This statement raises a question as to whether some fees had already been paid by relator to SMP. Most importantly, the SHO's September 15, 2022 fee controversy letter is devoid of any indication that SMP submitted evidence regarding prior payments or that prior payments to SMP were considered in reaching the determination regarding the fee due to SMP.

{¶ 46} Ohio Adm.Code 4121-3-24(B) requires a party requesting the commission's resolution of a fee controversy to provide certain specific evidence including any and all payments received. It is undisputed that SMP did not provide that required evidence. The commission nevertheless calculated an amount it found to be a reasonable fee for services rendered by SMP in resolving the fee controversy between SMP and relator. Although the commission possesses substantial discretion in weighing the evidence before it, such discretion does not permit the commission to disregard applicable administrative rules or the law. *See State ex rel. Bashein & Bashein Co., LPA v. Indus. Comm.*, 10th Dist. No. 10AP-642, 2011-Ohio-5168, ¶ 31. Because SMP failed to provide the evidence required under Ohio Adm.Code 4121-3-24(B) to support the determination of the fee controversy between relator and SMP, the commission committed an abuse of discretion in resolving such dispute. Therefore, relator has demonstrated a clear legal right to the requested relief and that the commission was under a clear legal duty to act.

## D. Conclusion

{¶ 47} Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be granted such that this matter is remanded to the commission with instructions to vacate its September 15, 2022 fee controversy letter and to conduct such further proceedings as may be required in accordance with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.